# BEFORE THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CVB INC,

*Plaintiff-Appellant,*

v.

UNITED STATES,

*Defendant-Cross Appellant,*

BROOKLYN BEDDING, LLC; CORSICANA MATTRESS CO.;
ELITE COMFORT SOLUTIONS; FXI INC.; INNOCOR INC.;
KOLCRAFT ENTERPRISES INC.; LEGGETT & PLATT INC.;
INTERNATIONAL BROTHERHOOD OF TEAMSTERS; UNITED
STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE WORKERS, INTERNATIONAL
UNION, AFL-CIO ("MATTRESS PETITIONERS"),

*Defendants-Appellees.*

Appeal from the United States Court of International Trade in
Case No. 01:21-cv-00288-SAV
Judge Stephen Alexander Vaden

## NONCONFIDENTIAL RESPONSE BRIEF ON BEHALF OF DEFENDANTS-APPELLEES MATTRESS PETITIONERS

Yohai Baisburd
Mary Jane Alves
Chase Dunn
Nicole Brunda
Margaret Monday
Sydney Reed
CASSIDY LEVY KENT (USA) LLP
2112 Pennsylvania Avenue, Suite 300
Washington, DC 20037; Ph: (202) 567-2300
*Counsel to Defendants-Appellees Mattress Petitioners*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2024-1504, 2024-1566 |
| **Short Case Caption** | CVB, Inc. v. US |
| **Filing Party/Entity** | Mattress Petitioners |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/30/2024

Signature: /s/ Mary Jane Alves

Name: Mary Jane Alves

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. <br><br> ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. <br><br> ☑ None/Not Applicable |
| Brooklyn Bedding, LLC | | |
| Corsicana Mattress Company | | |
| Elite Comfort Solutions (now part of Leggett & Platt, Incorporated) | | |
| Innocor, Inc. (now part of FXI, Inc.) | | |
| Kolcraft Enterprises Inc. | | |
| Leggett & Platt, Incorporated | | |
| The International Brotherhood of Teamsters | | |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union, AFL-CIO | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☑   Additional pages attached

| See Attachment A | | |
|---|---|---|
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)    ☐   No    ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |

**Attachment A to Certificate of Interest**
**CAFC No. 2024-1504, 2024-1566**

The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

| | |
|---|---|
| *Appearing before this Court:* | **CASSIDY LEVY KENT (USA) LLP**<br>Yohai Baisburd, Partner<br>Mary Jane Alves, Partner<br>Nicole Brunda, Associate<br>Chase J. Dunn, Associate<br>Margaret E. Monday, Associate<br>Sydney Reed, Associate |
| *Before trial court or agency:* | **CASSIDY LEVY KENT (USA) LLP**<br>Mary Jane Alves, Yohai Baisburd, William N. Baldwin, Thomas M. Beline, James R. Cannon, Jr., Robert C. Cassidy, Jr., Charles S. Levy, Myles S. Getlan, David P. Sanders, Ulrika K. Swanson, Jonathan M. Zielinski, James E. Ransdell, Sarah E. Shulman, Nicole Brunda, Chase J. Dunn, Margaret E. Monday, Sydney Reed *and formerly*: Jeffery B. Denning, Laurence W. Frierson, Thomas R. Graham, Jack A. Levy |

Table of Contents

Page

STATEMENT OF RELATED CASES .......................................................2

JURISDICTIONAL STATEMENT .........................................................2

STATEMENT OF THE CASE.................................................................3

   I.   Foreign Producers and Importers Targeted the US Mattress Market with a Second Round of Unfairly Traded Imports ..................................3

   II.  Mattresses May Be Shipped Flat as FPMs or Packaged in a Box as MiBs ....5

   III. CVB Did Not Contest Cumulation Based on Packaging, and the Record Showed a Reasonable Overlap of Competition Among All Sources ..............8

   IV. The Commission Considered Demand for and Supply of FPMs and MiBs and the Substitutability of All Mattresses Regardless of Packaging ...10

      A.  Consumption of All Mattresses, including MiBs, Increased, and FPM Consumption Fell Despite Stable or Increasing Demand for FPMs.......10

      B.  The Domestic Industry Shipped All Mattress Types Even if Certain Individual Domestic Producers Specialized in Certain Types ................11

      C.  The Facts Showed Moderately High Substitutability Among US-Made Mattresses and Subject Imports and Between MiBs and FPMs ...12

   V.  Cumulated Subject Imports Materially Injured the Domestic Industry, and the Facts Did Not Show Attenuated Competition Due to Packaging.....13

      A.  The Commission Identified a Causal Nexus Between Subject Imports and the Domestic Industry's Condition ........................13

      B.  The Commission Rejected CVB's Attenuated Competition Claims.......14

      C.  The Commission also Identified Harm to US MiB Producers................15

STATEMENT OF THE ISSUES ............................................................16

SUMMARY OF THE ARGUMENT ......................................................17

ARGUMENT .......................................................................................19

   I.   CVB Provides No Basis for This Court to Reweigh the Evidence ...............19

   II.  The Commission Did Not Ignore or "Manipulate" Evidence, and It Reasonably Rejected CVB's "Highly Attenuated Competition" Claims......20

A. MiBs are Not "Significantly Different" or Next-Generation Products Not Offered by US Producers, and MiBs Do Compete with FPMs........23

    1. CVB did not argue for a separate MiB like product..........................23

    2. MiBs do not represent a next-generation product or a product that the domestic industry was unable or unwilling to make...................26

    3. FPMs compete with MiBs, a fact CVB refuses to accept .................29

B. The Commission Reasonably Rejected CVB's Segmentation Claims ...32

    1. CVB misses the point when trying to segment US producers...........33

    2. CVB also reweighs the facts to argue purchaser segmentation.........37

C. Purchasers Consumed More Imported MiBs than US FPMs Due to Lower Prices, Not Due to Packaging or Falling Demand for FPMs.......40

    1. Lower prices and not packaging explains purchasers' increased consumption of MiBs from the subject countries .............................41

    2. Lower prices of MiBs from the subject countries and not lower demand for FPMs explained increased consumption of MiBs .........44

III. The Commission Reasonably Found Harm to US MiB Producers ...............46

A. CVB Wants to Reweigh Evidence of Harm to MiB Producers...............47

B. The Commission Did Not Need to Discuss Data for Individual US Producers, and Any Ambiguity in that Discussion is Harmless..............50

CONCLUSION .....................................................................................................51

Table of Authorities

Page

**Statute**

19 USC § 1677(4) ......................................................................33

19 USC § 1677(4)(A)..........................................................23, 33, 34, 36

19 USC § 1677(4)(B) ....................................................................5

19 USC § 1677(7)(B)..........................................................33, 34, 36

19 USC § 1677(7)(C)(iii) ................................................................10

19 USC § 1677(7)(G)(i) ..................................................................8

19 USC § 1677(9)(C) .....................................................................3

19 USC § 1677(9) (D) ....................................................................3

19 USC § 1677(10) ..................................................................23, 25

28 USC § 1295(a)(5)......................................................................2

28 USC § 1581(c) .........................................................................3

28 USC § 2631(j)(1)(B) ..................................................................3


**Supreme Court Decisions**

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966) .............................19

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) .......................20

**Federal Circuit Decisions**

*Altx, Inc. v. United States*, 370 F.3d 1108 (Fed. Cir. 2004)......................................20

*Cleo Inc. v. United States*, 501 F.3d 1291 (Fed. Cir. 2007) ........................23, 34, 36

*CVB Inc. v. United States*, 675 F. Supp3d 1333 (Fed. Cir. 2023).....................27, 46

*Fundicao Tupy, S.A. v. United States*, 859 F.2d 915 (Fed. Cir. 1988) ......................8

*Hitachi Metals, Ltd. v. United States*, 949 F.3d 710 (Fed. Cir. 2020).....................20

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006)...19, 20, 33, 47

*Siemens Energy, Inc. v. United States*, 806 F.3d 1367 (Fed. Cir. 2015) .................19

*Timken U.S. Corp. v. United States*, 421 F.3d 1350 (Fed. Cir. 2005) ......................20

*United States Steel Group v. United States*, 96 F.3d 1352 (Fed. Cir. 1996) ............32

**Court of International Trade Decisions**

*Shandong TTCA Biochem. Co., Ltd. v. United States*, 710 F. Supp. 2d 1368
(Ct. Int'l Trade 2010) ...............................................................................................5

*Fundicao Tupy, S.A. v. United States*, 678 F. Supp. 898 (Ct. Int'l Trade 1988) ........8

**Administrative Determinations and Notices**

*Certain Cast Iron Pipe Fittings from Brazil, the Republic of Korea,
and Taiwan*, Inv. Nos. 731-TA-278 to 280, USITC Pub. 1845 (May 1986) .............8

*Mattresses from Cambodia*, 86 Fed. Reg. 15894 (Mar. 5, 2021) .............................4

*Mattresses from Cambodia, China, Indonesia, Malaysia, Serbia, Thailand, Turkey, and Vietnam*, Inv. Nos. 701-TA-645 and 731-TA-1495 (Preliminary), USITC Pub. 5059 (May 2020)................................................................. 18, 24-26

*Mattresses from China*, Inv. No. 731-TA-1424 (Final), USITC Pub. 5000 (May 2020) ............................................................................ 18, 24-26

*Mattresses from Indonesia*, 86 Fed. Reg. 15899 (Mar. 5, 2021) ..............................4

*Mattresses from Malaysia*, 86 Fed. Reg. 15901 (Mar. 5, 2021) ..............................4

*Mattresses from the People's Republic of China*, 86 Fed. Reg 15910 (Mar. 5, 2021)..................................................................................4

*Mattresses from the Republic of Turkey*, 86 Fed. Reg. 15917 (Mar. 5, 2021)...........4

*Mattresses from the Socialist Republic of Vietnam*, 86 Fed. Reg. 15892 (Mar. 5, 2021)..................................................................................4

*Mattresses from Thailand*, 86 Fed. Reg. 15928 (Mar. 5, 2021)................................4

*Mattresses from Cambodia, Indonesia, Malaysia, Serbia, Thailand, the Republic of Turkey, and the Socialist Republic of Vietnam*, 86 Fed. Reg. 26460 (May 14, 2021) ..........................................................................4

*Mattresses from the People's Republic of China,* 86 Fed. Reg. 26463 (May 14, 2021)...............................................................................4

*Outboard Engines from Japan and Uncoated Groundwood Paper from Canada*, Inv. Nos. 731 TA 1069, USITC Pub. 3752 (Feb. 2005) ..................26

*Uncoated Groundwood Paper from Canada*, Inv. Nos. 701-TA-584 and 731-TA-1382 (Final), USITC Pub. 4822 (Sept. 2018) ................................. 26-28, 29

**Other**

Uruguay Round Agreements Act, H.R. Rep. No. 103 316, vol. I at 892 (1994)....................................................................................20

## BEFORE THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CVB, INC.,

*Plaintiff-Appellant,*

v.

UNITED STATES,

*Defendant-Cross-Appellant,*

BROOKLYN BEDDING, LLC; CORSICANA MATTRESS CO.;
ELITE COMFORT SOLUTIONS; FXI INC.; INNOCOR INC.;
KOLCRAFT ENTERPRISES INC.; LEGGETT & PLATT INC.;
INTERNATIONAL BROTHERHOOD OF TEAMSTERS; UNITED
STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE WORKERS, INTERNATIONAL
UNION, AFL-CIO ("MATTRESS PETITIONERS"),

*Defendants-Appellees.*

> Appeal from the United States Court of International Trade in
> Case No. 01:21-cv-00288-SAV
> Judge Stephen Alexander Vaden

## CONFIDENTIAL RESPONSE BRIEF ON BEHALF OF DEFENDANTS-APPELLEES MATTRESS PETITIONERS

On behalf of Defendant-Appellees Brooklyn Bedding, LLC; Corsicana

Mattress Co.; Elite Comfort Solutions; FXI, Inc.; Innocor, Inc.; Kolcraft

Enterprises, Inc.; Leggett & Platt, Inc.; International Brotherhood of Teamsters;

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial

and Service Workers International Union, AFL-CIO (collectively "Mattress

Petitioners"), we respectfully submit this Response Brief opposing the brief

submitted by Plaintiff-Appellant CVB, Inc. ("CVB"). *See* Corrected Confidential

Principal Brief of CVB, Inc. (Jul. 1, 2024) ("CVB Brief"). Importer CVB[1] appeals

the December 19, 2023 decision issued by Judge Stephen Alexander Vaden in

*CVB, Inc. v. United States*, 675 F. Supp. 3d 1324 (Ct. Int'l Trade 2023). In that

decision, the US Court of International Trade ("CIT") affirmed the final affirmative

material injury determination issued by the US International Trade Commission

("Commission") in *Mattresses from Cambodia, China, Indonesia, Malaysia,*

*Serbia, Thailand, Turkey, and Vietnam*, Inv. Nos. 701-TA-645 and 731-TA-1495 to

1501 (Final), USITC Pub. 5191 (May 2021), Appx14727-15238.[2]

## STATEMENT OF RELATED CASES

Mattress Petitioners concur with CVB's Statement of Related Cases.

## JURISDICTIONAL STATEMENT

Mattress Petitioners confirm that this Court has jurisdiction pursuant to

28 USC § 1295(a)(5). CVB Brief at 2. Mattress Petitioners intervened pursuant to

---

[1] CVB imported mattresses into the United States but not from all subject countries. *See* Importer Questionnaire (Final), Appx95453, 95465, 95476.

[2] Publication 5191 contains the public version of the Commission's Views and Report. Due to limits on the number of confidential words in this submission, this brief refers to the confidential version of the Commission's Views ("Confidential Views") and Report ("Confidential Report") to facilitate the Court's review of the actual confidential data underpinning the Commission's decision.

28 USC § 2631(j)(1)(B) as a matter of right as producers of the domestic like

product and labor unions within the meaning of 19 USC § 1677(9)(C)-(D).

Mattress Petitioners agree that the CIT possessed jurisdiction in the underlying

proceeding pursuant to 28 USC § 1581(c).  CVB Brief at 2.

## STATEMENT OF THE CASE

I.    **Foreign Producers and Importers Targeted the US Mattress Market
       with a Second Round of Unfairly Traded Imports**

On December 16, 2019, following the Commission's unanimous affirmative

material injury determination in an investigation of mattresses from China, the US

Department of Commerce ("Commerce") published an antidumping duty ("AD")

order on those imports and assigned weighted-average dumping margins of

57.03-1,731.75 percent.  *See* Confidential Views at 57, Appx123969, 124023; *see*

*also Mattresses from China*, Inv. 731-TA-1424 (Final), USITC Pub. 5000 (Dec.

2019).  Meanwhile, other suppliers of mattresses already had started displacing

Chinese imports before the AD order on Chinese mattresses took effect.

Confidential Views at 39-40, Appx124005-124006; Confidential Report at Figure

IV-2, Table C-2, Appx124117, 124234, 124463.  As the Commission explained,

many of the same firms "that had supplied the US market from production

facilities in China began to export mattresses to the United States from related

production facilities in Cambodia, Indonesia, Malaysia, Serbia, Thailand, Turkey,

and Vietnam." Confidential Views at 40, Appx124006. Moreover, some of the same firms that previously imported mattresses from China, including CVB, switched suppliers to the new countries. *See* Confidential Report at Table IV-1, Appx124224-124227; USITC Pub. 5000 at Table IV-1.

On March 31, 2020, within months after the AD order on China took effect, Mattress Petitioners filed a second round of petitions. Confidential Views at 3, Appx123969. At the conclusion of its investigations, Commerce determined that the government of China subsidized mattress production and imports from other subject countries were sold at less than fair value in a range of margins. *See* 86 Fed. Reg 15910 (Mar. 5, 2021) (China 97.78 percent); 86 Fed. Reg. 15894 (Cambodia 45.34 percent); 86 Fed. Reg. 15899 (Indonesia 2.2 percent); 86 Fed. Reg. 15901 (Malaysia 42.92 percent); 86 Fed. Reg. 15892 (Serbia 112.11 percent); 86 Fed. Reg. 15928 (Thailand 37.48-763.28 percent); 86 Fed. Reg. 15917 (Turkey 20.03 percent); 86 Fed. Reg. 15899 (Vietnam 144.92-668.38 percent).

In the companion injury investigations that are at issue in the instant appeal, the Commission unanimously determined that the domestic industry was materially injured by reason of the unfairly traded imports. *See* Confidential Views at 3, Appx123969. Commerce then imposed countervailing duty ("CVD") or AD orders on the imports, as applicable. 86 Fed. Reg. 26463 (May 14, 2021) (CVD order on China); 86 Fed. Reg. 26460 (May 14, 2021) (AD orders on all others). CVB

appealed the Commission's affirmative injury determinations, except that it lacked

standing to appeal the determinations with respect to one subject country from

which it had no imports. *See Shandong TTCA Biochem. Co., Ltd. v. United States*,

710 F. Supp. 2d 1368 (Ct. Int'l Trade 2010); CVB's Importer QR (Final),

Appx95465, 95476.

## II. Mattresses May Be Shipped Flat as FPMs or Packaged in a Box as MiBs

As the Commission recognized, mattresses involve a range of youth and

adult sizes (*e.g.*, twin, king), cores (*e.g.*, innerspring, hybrid, non-innerspring),

spring quality, foam density and type, upholstery and ticking quality, and other

design features. Confidential Views at 5-15, Appx123591-123981; Confidential

Report at I-10 to I-14, Appx124134-124138. Mattresses with all three core types

may be packaged flat for delivery (what the Commission referred to as flat-packed

mattresses or "FPMs") or the mattresses may be rolled and compressed and

packaged as a "mattress in a box" or "MiB"). Confidential Views at 10,

Appx123976; Confidential Report at I-15, II-1, Appx124139, 124147. The

Commission defined a single domestic like product that encompassed all

US-manufactured mattresses corresponding to the scope. Confidential Views at

13, Appx123979. The Commission defined the domestic industry as all US

producers of the domestic like product, except those excluded under 19 USC §

1677(4)(B) which favored their importing operations over domestic production.

*See* Confidential Views at 16-25, Appx123982-123991. CVB did not contest the definition of the domestic like product or the domestic industry definition.

All mattresses, regardless of size (*e.g.*, twin, King), core (*e.g.*, foam, innerspring, hybrid), height, or other such features involve similar manufacturing processes – assembling the core materials such as springs and/or foam with upholstery material and enclosing them in the ticking or cover. Confidential Report at I-14 to I-17, Appx124138-124140. At the last stage, manufacturers may compress and roll the mattress for packaging into a box as an MiB, or they may ship the mattresses flat, typically with a plastic cover as an FPM. Manufacturers use different machinery at that stage to package the mattresses as MiBs or as FPMs. Confidential Report at I-14 to I-17, Appx124138-124140.

Along with nearly identical production processes, manufacturers often use similar if not the same raw materials, including foam and innersprings, to manufacture FPMs and MiBs. As the Commission noted, manufacturers can produce MiBs and FPMs "to the same specifications using the same springs and foam, with the exception that innerspring MiBs must omit the border wire that innerspring FPMs may possess." Confidential Views at 42, Appx124008. The pricing products demonstrated widespread overlap of production materials for MiBs and FPMs with sales of pricing products 1, 3, and 5, which were packaged as MiBs, and sales of pricing products 2, 4, and 6, which were mattresses with the

same specifications (*e.g.*, size, height, foam type, foam density) as their product 1, 3, and 5 counterparts, that were packaged as FPMs. *See* Confidential Views at 42, 49-50, Appx124008, 124015-124016; Confidential Report at V-7 to V-8 (pricing product definitions) and Table V-3 to Table V-10 (pricing data), Appx124277-124300.

Most mattresses imported from the subject countries involved MiBs because ocean containers fit more mattresses packaged as MiBs, which reduces shipping costs. Confidential Views at 28-29, Appx123994-123995; Confidential Report at II-1, II-2, Table IV-10 to Table IV-15, Appx124147-124148, 124259-124269. By comparison, the domestic industry operates manufacturing facilities throughout the United States and has the capability to ship mattresses anywhere in the country within days, sometimes through company-owned delivery fleets. Confidential Views at 37, Appx124003; Confidential Report at II-31, Table III-1, Table III-5, Appx124177, 124195-124198, 124211. The domestic industry does not need to ship mattresses as MiBs due to its nationwide presence, but the domestic industry also ships substantial volumes of MiBs. Confidential Views at 28, 37, 41, Appx123994, 124003, 124007; Confidential Report at II-31, Table III-1, Table III-5, Table IV-12, Table IV-13, Table VI-6, Appx124177, 124195-124198, 124211, 124263-124265, 124371-124372.

## III.   CVB Did Not Contest Cumulation Based on Packaging, and the Record Showed a Reasonable Overlap of Competition Among All Sources

Where, as here, Mattress Petitioners filed all petitions on the same day, the statute requires the Commission to cumulate (*i.e.*, combine the effects of) all subject imports, if such imports compete with one another and the domestic like product in the US market.  *See* 19 USC § 1677(7)(G)(i).  The Commission generally analyzes four factors regarding the existence of a "reasonable overlap" of competition:  fungibility among the domestic like product and imports from the various subject countries; sales through overlapping geographic markets; sales through overlapping distribution channels; and whether the various sources overlapped simultaneously.  *See, e.g.*, *Certain Cast-Iron Pipe Fittings from Brazil, the Republic of Korea, and Taiwan*, Inv. Nos. 731-TA-278 to 280 (Final), USITC Pub. 1845 (May 1986), *aff'd*, *Fundicao Tupy, S.A. v. United States*, 678 F. Supp. 898 (Ct. Int'l Trade), *aff'd*, 859 F.2d 915 (Fed. Cir. 1988).

CVB did not contest fungibility based on packaging or otherwise argue against cumulation.[3]  In terms of fungibility, while "most subject imports from all

---

[3] As one of the "Joint Respondents," CVB did not dispute cumulation and encouraged the Commission to cumulate subject imports from China with other subject imports, if the evidence satisfied the statutory cumulation criteria. Confidential Views at 3, 27, Appx123969, 123993.

sources consisted of MiBs, the domestic industry shipped substantial quantities of both MiBs and FPMs of all types," and certain subject countries also exported substantial volumes of FPMs. Confidential Views at 28-29, Appx123994-123995; Confidential Report at Table IV-12 to Table IV-15, Appx124263-124269. Furthermore, the record showed "a moderately high degree of substitutability" among the domestic like product and imports from each subject country, and nearly all responding market participants reported all sources to be "always or frequently interchangeable." Confidential Views at 28, Appx123994; Confidential Report at II-30 to II-31, Table II-15, Appx124176-124177, 124185-124186. Most purchasers rated US mattresses and imports from each of the subject countries as comparable "with respect to 26 factors that influence purchasing decisions," and nearly all offered a complete range of mattresses in 2019, including innerspring, foam, and hybrid mattresses in all sizes. Confidential Views at 28, Appx123994; Confidential Report at Table II-14, Table IV-4 to Table IV-7, Appx124182-124184, 124240-124250.

The Commission also pointed to evidence that the domestic industry sold mattresses in the same distribution channels as imports from each of the subject countries, primarily to retailers. Confidential Views at 29, Appx123995; Confidential Report at Table II-4, Table D-1, Appx124156-124158, 124467-124473. The domestic industry and importers from each of the subject countries

sold mattresses in overlapping US regions, with official import data showing

imports from all subject countries in every month from June 2019 to December

2019, and purchasers reporting buying imports from the domestic industry and all

subject countries in every year from 2017-2019.  Confidential Views at 29-30,

Appx123995-123996; Confidential Report at Table IV-8, Table IV-9, Appx124253,

124255-124256.  Based on this evidence of a reasonable overlap of competition

among subject imports and between the domestic industry and imports from each

of the subject countries, the Commission cumulated subject imports from

Cambodia, China, Indonesia, Malaysia, Serbia, Thailand, Turkey, and Vietnam for

its injury analysis.  Confidential Views at 30-31, Appx123996-123997.  CVB did

not appeal this conclusion.

## IV.    The Commission Considered Demand for and Supply of FPMs and MiBs and the Substitutability of All Mattresses Regardless of Packaging

### A.    Consumption of All Mattresses, including MiBs, Increased, and FPM Consumption Fell Despite Stable or Increasing Demand for FPMs

When considering the conditions of competition pertinent to its injury

analysis within the meaning of 19 USC § 1677(7)(C)(iii), the Commission

observed increased consumption of MiBs and declining consumption of FPMs

during a period when apparent US consumption of all mattresses increased from

January 2017 to September 2020 (the "period of investigation" or "POI").

Confidential Views at 36, Appx124002; Confidential Report at Table IV-12 to

Table IV-15, Table C-2, Appx124263-124269, 124464-124466.  The Commission

pointed out that consumption of FPMs exceeded MiB consumption throughout the

POI and that a majority of questionnaire respondents reported stable or increasing

demand for FPMs.  Confidential Views at 36, Appx124002; Confidential Report at

Table II-8a, Table II-8b, Appx124172, 124174.

> B.     The Domestic Industry Shipped All Mattress Types Even if Certain
> Individual Domestic Producers Specialized in Certain Types

The domestic industry as a whole shipped all types of mattresses, including

innerspring, foam, hybrid, adult, and youth mattresses, packaged as both FPMs and

MiBs.  Confidential Views at 38, Appx124004; Confidential Report at Table IV-4

to Table IV-7, Appx124240-124250.  At the same time, the Commission recognized

that many domestic producers specialize in particular mattress types (*e.g.*, youth,

foam/innerspring), with some packaging their mattresses as MiBs, others

packaging them as FPMs, and some offering both types of packaging.  Confidential

Views at 38, Appx124004; Confidential Report at Table III-1, Appx124195-

124198.  As the Commission also explained, the "domestic industry made

substantial investments to expand its capacity to produce MiBs."  Confidential

Views at 38-39, Appx124004-124005; Confidential Report at Table III-5,

Appx124211.

C.   The Facts Showed Moderately High Substitutability Among US-Made Mattresses and Subject Imports and Between MiBs and FPMs

The record demonstrated moderately high substitutability among US-made mattresses and subject imports.  Most subject imports consisted of MiBs, but substantial volumes of FPMs were imported from certain subject countries.  The domestic industry shipped primarily FPMs as well as substantial quantities of MiBs.  Confidential Views at 41, Appx124007; Confidential Report at II-30 to II-31, Table IV-12 to Table IV-15, Appx124176-124177, 124263-124269. Irrespective of differences in the relative ratios of MiBs/FPMs between the domestic industry and subject imports, the Commission found that MiBs competed with FPMs.  Confidential Views at 41-42, Appx124007-124008.  The domestic industry and importers of subject merchandise offered quality mattresses in a full range of sizes, cores, and other features, were always or frequently interchangeable, and were comparable in terms of 26 factors influencing purchasing decisions.  Confidential Views at 41; App124007; Confidential Report at Table IV-4 to Table IV-7, Table II-14 to Table II-16, Appx124240-124250, 124182-124187.  US producers and importers offered similar lead times from inventory, and they competed through the same distribution channels, primarily to retailers.  Confidential Views at 45-46, Appx24011-124012; Confidential Report at II-3, Table II-4, Table D-1, Appx124149, 124156-124158, 124467-124473.

## V. Cumulated Subject Imports Materially Injured the Domestic Industry, and the Facts Did Not Show Attenuated Competition Due to Packaging

The Commission concluded that the domestic mattress industry was

materially injured by reason of subject imports. CVB's attenuated competition

claims lacked adequate record support, whereas the Commission identified

evidence showing that subject imports injured even domestic MiB producers.

### A. The Commission Identified a Causal Nexus Between Subject Imports and the Domestic Industry's Condition

The Commission determined that cumulated subject imports materially

injured the domestic industry. During a period of "strong demand growth" and

despite available domestic production capacity, most measures of the domestic

industry's performance worsened overall between 2017 and 2019. Confidential

Views at 58-62, Appx124024-124027; Confidential Report at Table C-2,

Appx124464-124466. Some metrics improved in January to September

("interim") 2020 compared to interim 2019, "but {they were} lower than they

would have been had subject imports not captured market share from the industry

and depressed the industry's sales prices to a significant degree." Confidential

Views at 65, Appx124031; Confidential Report at Table C-2, Appx124464-124466.

The domestic industry lost market share to increasing volumes of subject imports

that were engaged in widespread underselling at significant margins and that

depressed prices for six of eight domestic pricing products. Confidential Views at 48, 50, Appx124014, 124016; Confidential Report at Table V-3 to Table V-21, Table C-2, Appx124279-124349, 124464-124466. On this basis, the Commission found a causal nexus between the domestic industry's condition and subject imports.[4] Confidential Views at 48, Appx124014.

B.    The Commission Rejected CVB's Attenuated Competition Claims

Whereas CVB emphasized the domestic industry's production of primarily FPMs and questioned how subject imports comprised mostly of MiBs harmed the domestic industry, the Commission noted "that domestic producers produce and ship significant quantities of MiBs." Confidential Views at 65-67, Appx124031-124033; Confidential Report at Table IV-12 to Table IV-15, Appx124263-124269. The Commission rejected CVB's attenuated competition claims based on evidence demonstrating competition between MiBs and FPMs, which were generally made from the same materials, using overlapping

---

[4] The Commission also considered whether other factors adversely impacted the domestic industry to ensure that it was not attributing any injury from such other factors to the domestic industry. Demand improved over the period, and non-subject imports remained flat absolutely and lost market share to a larger volume of subject imports. Moreover, declining costs did not explain declines in the domestic industry's prices. Confidential Views at 54-56, 72-73, Appx124020-124022, 124038-124039. Thus, other factors did not explain the domestic industry's deteriorating condition.

manufacturing processes, displayed side-by-side by purchasers, and cross-shopped

by consumers. Confidential Views at 66, Appx124032; Confidential Report at I-10

to I-17, II-1 to II-3, II-5, II-7, Appx124134-124141, 124147-124149, 124151,

124153. The domestic industry as a whole lost market share to subject imports,

including when subject imports of MiBs undersold comparable US-made FPMs,

particularly where purchasers ranked price as more important than packaging.

Confidential Views at 68, Appx124034; Confidential Report at Table II-11, Table

II-12, Table V-3 to V-21, Table C-2, Appx124179-124180, 124279-124349,

124464-124466. Due to the competition between MiBs imported from the subject

countries and domestically produced FPMs, the Commission based its "impact

analysis entirely on the domestic industry as a whole" and did not find it

appropriate or instructive to focus on solely subject imports' impact on domestic

MiB producers. Confidential Views at 69, Appx124035.

C.      The Commission also Identified Harm to US MiB Producers

The Commission also explained why "subject imports also had an impact on

domestic producers that exclusively produced MiBs." Confidential Views at 69,

Appx124035. In a period of increasing US consumption of MiBs and despite

increasing their US shipments of MiBs, domestic MiB producers reported capacity

utilization of only 57.2 percent in 2017, 62.0 percent in 2018, 60.3 percent in 2019,

64.7 percent in interim 2020, and 49.8 percent in interim 2020. Confidential Views

at 70, Appx124036; Confidential Report at Table III-5, Table IV-12 to Table IV-13,

Appx124211, 124263-124265. Subject imports of MiBs engaged in widespread

underselling of US-manufactured MiBs, and domestic prices for MiB pricing

product 3 and MiB pricing product 5 declined overall. Confidential Report at

V-12, V-19, V-25, V-28, Appx124282, 124289, 124295, 124298. Indeed, subject

imports of MiBs increased their share of overall apparent US consumption by more

than US-produced MiBs increased their market share from 2017 to 2019 and

between interim periods. Confidential Views at 71, Appx124037; Confidential

Report at F-5 (domestic industry), F-41 (subject imports), Appx124495, 124531.

Specific domestic MiB producers reported that subject imports adversely impacted

returns on their investments. Confidential Views at 72 & n.313, Appx124038. In

short, domestic MiB producers "could have had greater sales revenues and

operating and net income than they did during the period of investigation but for

subject import competition." Confidential Views at 71-72, Appx124037-124038.

## STATEMENT OF THE ISSUES

1.      The first question presented is whether the Commission's affirmative
        determination is supported by substantial evidence and otherwise in
        accordance with law where the Commission explained the causal
        nexus between subject imports and the condition of the domestic
        industry as a whole and rejected CVB's attenuated competition claims
        where CVB did not challenge the domestic like product or domestic
        industry definitions, where the record demonstrated that US producers

use nearly identical manufacturing processes and often the same components to produce mattresses packaged in a box ("MiBs") and mattresses shipped in flat packaging ("FPMs"), where the Commission considered behavior of individual domestic producers and purchasers despite focusing on the domestic industry as a whole, where MiBs compete with FPMs for sales in the same geographic regions through overlapping distribution channels, and even to many of the same purchasers, and where lower prices of MiBs from the subject countries and not lower demand for FPMs explain any shift in purchases from domestically manufactured FPMs to MiBs imported from the subject countries?

2.   The second question presented is, even if CVB identified no factual or legal basis for the Commission to do so, did the Commission reasonably conclude that MiBs from the subject countries injured domestic MiB producers, where MiBs imported from the subject countries used significant underselling to gain more market share than US-made MiBs and depressed US MiB producers' prices, which resulted in US MiB producers operating at low capacity utilization, obtaining lower returns on their investments, and otherwise achieving lower sales and revenues than they otherwise would have?

## SUMMARY OF THE ARGUMENT

This appeal turns on packaging, that is whether packaging of mattresses somehow merited negative rather than affirmative injury determinations.  As explained below, in this second set of investigations regarding unfairly traded mattress imports, CVB did not advocate for two separate domestic like products based on packaging, a precondition for the Commission to examine injury to a domestic industry packaging mattresses in a box separately from injury to a domestic industry shipping mattresses flat.  No party had made such an argument in the first proceeding either.  CVB also did not suggest that differences in

packaging prevented the Commission from finding a reasonable overlap of competition among the domestic like product and imports from each of the subject countries, a prerequisite to cumulating the injurious effects of subject countries on the domestic industry. Instead, CVB claimed attenuated competition between cumulated subject imports and the domestic industry based on packaging, an argument that the Commission had rejected in the prior investigation.

The instant administrative record demonstrated interchangeability, fungibility, and substitutability among mattresses made in the United States and imported from the subject countries and otherwise failed to support CVB's claims of attenuated competition based on packaging. Confidential Views at 5-13, 28-29, 41-46, 65-69, Confidential Report at I-13 to I-17, Table II-14, Table II-15, Table IV-4 to Table IV-7, Appx124137-124141, 124182-124186, 124239-124250; *Mattresses from Cambodia, China, Indonesia, Malaysia, Serbia, Thailand, Turkey, and Vietnam*, Inv. Nos. 701-TA-645 and 731-TA-1495 (Preliminary), USITC Pub. 5059 (May 2020) at 11; USITC Pub. 5000 at 9. The Commission described in detail why the evidence demonstrated that the domestic industry was materially injured by reason of cumulated subject imports. Confidential Views at 41-65, 72-73, Appx124083-124107, 124114-124115. The Commission also rejected CVB's attenuated competition claims and explained why the evidence demonstrated competition between FPMs and MiBs and that MiB consumption

increased at the expense of FPMs due to lower prices of MiBs imported from the

subject countries and not due to declining demand for FPMs.  Confidential Views

at 41-46, 65-69, Appx124083-124088, 124107-124111.  Finally, even though CVB

offered no legal basis for the Commission to do so, the Commission also explained

how subject imports negatively impacted domestic MiB producers, which did not

gain as much market share as lower-priced MiBs from the subject countries,

operated at low capacity utilization, did not achieve expected returns on

investment, and otherwise did not perform as well as they otherwise would have.

Confidential Views at 69-72, Appx124111-124114.

## ARGUMENT

## I.     CVB Provides No Basis for This Court to Reweigh the Evidence

CVB overlooks an important aspect of the applicable legal standards --- who

has the authority to weigh the evidence and testimony.  *See* CVB's Brief at 23-25.

Under the substantial-evidence standard, the Federal Circuit examines whether the

Commission's decision is unreasonable.  *Nippon Steel Corp. v. United States*, 458

F.3d 1345, 1351 (Fed. Cir. 2006).  The "possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's

findings from being supported by substantial evidence."  *Siemens Energy, Inc. v.

United States*, 806 F.3d 1367, 1372 (Fed. Cir. 2015) (quoting *Consolo v. Fed. Mar.

Comm'n*, 383 U.S. 607, 620 (1966)).  Courts may not, "even as to matters not

requiring expertise … displace the {agency's} choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). Instead, reviewing courts "must affirm a Commission determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from the Commission's conclusion." *Hitachi Metals, Ltd. v. United States*, 949 F.3d 710, 716 (Fed. Cir. 2020) (citing *Altx, Inc. v. United States*, 370 F.3d 1108, 1121 (Fed. Cir. 2004)). If "the totality of the evidence does not illuminate a black-and-white answer to a disputed issue, it is the role of the expert fact-finder – here the majority of the Presidentially appointed, Senate-approved Commissioners – to decide which side's evidence to believe." *Nippon*, 458 F.3d at 1359. The Commission need not address every piece of evidence, so long as it addresses the issues material to its determination and its path is reasonably discernible. *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1354-57 (Fed. Cir. 2005); Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, vol. I at 892 (1994).

## II.    The Commission Did Not Ignore or "Manipulate" Evidence, and It Reasonably Rejected CVB's "Highly Attenuated Competition" Claims

The Commission explained why the domestic industry was materially injured by reason of cumulated subject imports. During a period of "strong

20

demand growth" and despite available production capacity,[5] most measures of the

domestic industry's performance, including capacity, production, capacity

utilization, inventories, US shipments, employment, net sales values, and

profitability, worsened overall between 2017 and 2019. Confidential Views at

58-62, Appx124100-124104; Confidential Report at Table II-8a, Table C-2, Appx-

124172, 124464-124466. Some domestic industry metrics improved in interim

2020 compared to interim 2019, "but {they were} lower than they would have

been had subject imports not captured market share from the industry and

depressed the industry's sales prices to a significant degree." Confidential Views

at 65, Appx124197; Confidential Report at Table C-2, Appx124464-124466.

    The Commission found a causal nexus between the domestic industry's

condition and the [   ] percentage point increase in cumulated subject imports'

market share from 2017-2019 and their additional [   ] percentage point increase

between interim 2019 and interim 2020. Confidential Views at 48, Appx124090;

Confidential Report at Table C-2, Appx124464-124466. The domestic industry

lost market share to increasing volumes of subject imports engaged in widespread

---

[5] The increase in subject imports from 2017 to 2019 and between interim 2019 and
interim 2020 exceeded the increases in apparent US consumption during those
periods. Confidential Views at 58, Appx124100; Confidential Report at Table C-2,
Appx124464-124466.

and significant underselling of the domestic like product based on price-to-price comparisons. Confidential Views at 48, 50, Appx124090, 124092; Confidential Report at Table V-3 to Table V-10, Table V-21, Appendix G, Appx124279-124300, 124349, 124553-124569. Purchase cost data showed landed duty-paid costs for direct imports of subject merchandise also fell below the domestic industry's prices by sizable differentials. Confidential Views at 51, Appx124093; Confidential Report at Table V-11 to Table V-17, Table V-21, Appx124311-124327, 124349. The Commission also found significant price depression by subject imports based on overall declines for six of the domestic industry's eight pricing products. Confidential Views at 53, Appx124095; Confidential Report at Table V-18, Appx124343-124345.

CVB characterizes as "attenuated" any competition between the domestic industry and subject imports. According to CVB, FPMs and MiBs are different products, and the Commission "manipulated data" or otherwise ignored evidence that domestic producers and purchasers were segmented between those producing/buying MiBs and those producing/buying FPMs. CVB blames any injury on declining domestic industry sales of FPMs, which competed with limited volumes of imported FPMs. CVB suggests that increasing volumes of MiBs from the subject countries did not injure domestic MiB producers, whose sales of MiBs

increased. CVB's Brief at 25-33. For the reasons below, this Court should reject

CVB's attenuated competition claims and decline to reweigh the evidence.

A. <u>MiBs are Not "Significantly Different" or Next-Generation Products Not Offered by US Producers, and MiBs Do Compete with FPMs</u>

CVB did not advocate for the Commission to treat MiBs and FPMs as

separate domestic like products, let alone to define two separate industries based

on packaging. MiBs are not "significantly different" products, because they are

manufactured with some of the same materials as FPMs using overlapping

production facilities. Moreover, MiBs do not represent next-generation products or

products that the domestic industry was unable or unwilling to supply.

Importantly, the record demonstrated that MiBs compete with FPMs, another fatal

flaw in CVB's attenuated competition argument.

1. <u>CVB did not argue for a separate MiB like product</u>

Before assessing whether a domestic industry is materially injured by reason

of imports of the subject merchandise, the Commission defines the domestic like

product and the corresponding domestic industry. *See* 19 USC §§ 1677(4)(A),

1677(10). The Commission starts with the scope of the imported subject

merchandise under investigation, defines the corresponding products manufactured

domestically, and then asks whether any clear lines divide that universe. *Cleo Inc.*

*v. United States*, 501 F.3d 1291, 1298 (Fed. Cir. 2007). Mattresses encompass a

range of sizes (*e.g.*, twin, king), cores (*e.g.*, foam, innerspring, hybrid), heights, and other features. Mattresses with all three core types may be packaged flat for delivery as FPMs or packaged in a box as MiBs. Confidential Views at 5-15, Appx123971-123981; Confidential Report at I-14 to I-17, Appx124138-124141; USITC Pub. 5059 at 11; USITC Pub. 5000 at 9.

Domestic producers' witnesses testified that they use overlapping manufacturing processes for mattresses packaged as FPMs and those packaged as MiBs, except at the final manufacturing stage, where they use a machine to encase the mattresses in plastic for shipping as FPMs or they use a machine to compresses and roll pack the mattresses into a box for shipping as MiBs. Confidential Views at 42, Appx124084; Mar. 18, 2021 Revised Transcript of Commission's Hearing ("Hearing Transcript") at 103 (Glassman), 104-05, 124, 137 (Merwin), 138 (Early), Appx12209, 12312-12314, 12333, 12346-12347; Confidential Report at I-14 to I-17, Appx124138-124141. Manufacturers cannot use a border wire around innerspring mattresses that they intend to ship as MiBs, but that does not prevent other non-innerspring FPMs or innerspring FPMs without such a border wire from competing with counterpart MiBs. Confidential Views at 42, Appx124084.

The pricing data confirmed widespread overlap of mattresses made to the exact same specifications (*e.g.*, size, height, foam type, foam density) that were packaged both flat as FPMs and in boxes as MiBs. Confidential Views at 42,

Appx124084; Confidential Report at V-7 to V-8 (pricing product definitions) and Table V-3 to Table V-8 (pricing data for FPMs (products 2, 4, 6) and MiBs (products 1, 3, 5)), Appx124277-124297. Domestic producers' witnesses reported using the same types of foam and innersprings to manufacture FPMs and MiBs, and witnesses whose firms also manufacture components testified selling MiB producers and FPM producers the same types of foam and innersprings. Confidential Views at 42, Appx124084; Hearing Transcript at 103 (Glassman), 104-05, 124, 137 (Merwin), 138 (Early), Appx12312-12314, 12333, 12346-12347. Respondents' witness even conceded that MiBs and FPMs "may be identical once unpackaged." Confidential Views at 42 at n.176, Appx124084; Hearing Transcript at 157 (Douglas), Appx12366.

The Commission had defined one domestic like product in the preliminary phase of the instant investigations and in the prior AD investigation of Chinese imports involving a virtually identical scope. Confidential Views at 13, Appx123979 (citing USITC Pub. 5059 (May 2020) at 11; USITC Pub. 5000 at 9). The Commission did not find any clear lines dividing the universe of US-manufactured mattresses, so it defined a single domestic like product comprised of all mattresses regardless of packaging within the meaning of 19 USC § 1677(10) (defining domestic like product as the product that is like or most similar in characteristics and uses with the subject merchandise under

investigation).  *See* Confidential Views at 10, 13, 15, Appx123976, 123979,

123981; Confidential Report at I-14 to I-17, Table II-4, Appx124138-124141,

124156-124158; USITC Pub. 5059 (May 2020) at 11; USITC Pub. 5000 at 9.  Due

to considerable overlap in product characteristics, raw materials, customer

perceptions, prices, and production processes shown by the evidence, no

respondent (including CVB) even argued before the Commission or on appeal that

FPMs and MiBs constitute separate domestic like products.

2. <u>MiBs do not represent a next-generation product or a product that
the domestic industry was unable or unwilling to make</u>

CVB refers to *Outboard Engines from Japan* and *Uncoated Groundwood*

*Paper from Canada* to suggest that the domestic mattress industry failed to keep up

with the latest technology or was somehow unable or unwilling to manufacture

MiBs.  CVB's Brief at 36-37 (citing Inv. No. 731-TA-1069, USITC Pub. 3752

(Feb. 2005) and Inv. Nos. 701-TA-584, 731-TA-1382, USITC Pub. 4822 (Sept.

2018) respectively).  In its negative determination in *Outboard Engines*, the

domestic industry manufactured engines that did not comply with emissions

standards instead of keeping up with growing demand for emissions-compliant

two-stroke direct injection and four-stroke outboard engines that were supplied by

subject imports.

Unlike emissions-compliant outboard engines, MiBs do not represent a next-generation product, just a mattress that is compressed and rolled to be packaged into a box for transport instead of being packaged flat for shipping. Confidential Report at I-14 to I-17, Appx124138-124141. As respondents' witness admitted, MiBs and FPMs "may be identical once unpackaged." Confidential Views at 42, Appx124008; Hearing Transcript at 157 (Douglas), Appx12366. Tellingly, if MiBs represented such a game changer, why would foreign producers and US importers underbid both US-manufactured MiBs and FPMs?[6] Confidential Views at 55, Appx124021; Confidential Report at Table V-3 to Table V-8, Appx124279-124297.

This case also is distinguishable from the Commission's negative determinations in *Uncoated Groundwood Paper from Canada*. CVB's Brief at 36-37 (citing Inv. Nos. 701-TA-584, 731-TA-1382, USITC Pub. 4822 (Sept. 2018)). In *Uncoated Groundwood Paper*, US paper producers lacked the capability to supply the market, lost market share to non-subject imports, and due

---

[6] Mattress Petitioners are not among the parties referenced by the CIT that characterized MiBs as lower priced as a general matter than FPMs. *CVB Inc. v. United States*, 675 F. Supp3d at 1333, because both MiBs and FPMs involved nearly identical raw materials and production processes. If anything, MiBs reflected additional packaging (a box) than FPMs and respondents attempted to characterize MiBs as more attractive to some purchasers.

to domestic producer decisions, also sourced some sales from the country under investigation. In contrast, here, the domestic industry operated manufacturing facilities throughout the United States and could ship mattresses anywhere in the country within days. With its truly national footprint, the domestic industry had no need to ship mattresses packaged as MiBs, unlike foreign producers and importers that opted to ship MiBs to fit more mattresses into ocean containers and reduce transit costs. Confidential Views at 66-67, Appx124108-124109; Confidential Report at II-1, II-2, II-31, Table III-1, Table III-5, Appx124147-124148, 124177, 124195-124198, 124211. Nonetheless, the Commission observed that the domestic industry also made substantial investments in roll-packing machinery and shipped substantial and increasing volumes of MiBs for those that preferred to receive their mattresses packaged in a box. Confidential Views at 37-39, Appx124079-124081; Confidential Report at Table III-1, Table IV-12, Table VI-6, Appx124195-124198, 124263, 124360-124372; Mattress Petitioners' Posthearing Brief at Exhibit 20, Appx114649, 114969-114972. Moreover, the domestic industry had ample unused capacity to produce mattresses, whether packaged as FPMs or as MiBs. Confidential Report at Table III-5, Table C-2, Appx124211, 124464-124465. The domestic industry's substantial unused capacity to supply mattresses, including mattresses packaged as MiBs, despite no need to supply mattresses in that packaging format, readily distinguishes these facts from those in *Uncoated*

*Groundwood Paper.* Confidential Views at 37-39, Appx124003-124005; Confidential Report Table III-1, Table III-5, Table IV-12, Appx124196-124198, 124211, 124263.

### 3. FPMs compete with MiBs, a fact CVB refuses to accept

Another flaw in CVB's attenuated competition arguments relates to its failure to recognize the significance of the Commission's finding that FPMs compete with MiBs. Most subject imports consisted of MiBs, but subject imports also included substantial volumes of FPMs. At the wholesale level, where the domestic industry competes with subject imports for sales, the domestic industry offered both MiBs and FPMs. Confidential Views at 41, Appx124083; Confidential Report at Table II-4, Table D-1, Appx124156-124158, 124467-124473. Some retailers take delivery of the mattresses and others direct domestic producers, US importers, or foreign manufacturers to ship those mattresses directly to their customers, the ultimate consumers. Confidential Views at 42-43, Appx124084-124085; Confidential Report at I-4, II-2, II-3, Appx124128, 124148-124149. Some consumers prefer white glove delivery of FPMs and removal of the old mattress, others living in a walk-up in Manhattan may prefer to receive a heavy but compacted MiB that they can navigate through stairwells or into an elevator, and other consumers have no preference. Hearing Transcript at 42-43, 56, Appx12251-12252, 12265. Regardless, nobody actually sleeps on a boxed MiB or

29

plastic-encased FPM. Once unpackaged either at the retail outlet or upon delivery at home, MiBs and FPMs otherwise serve the same purpose, as a sleeping surface. Confidential Views at 42, Appx124084.

Moreover, as noted in section II.A.1. above, MiBs do not constitute a different product than FPMs. Manufacturers use nearly all the same manufacturing processes to make MiBs and FPMs, except for the final packaging stage, and mattresses meeting the same product specifications were sold in both FPM and MiB packaging formats during the POI. Indeed, purchasers, many of whom sell in more than one distribution channel (*e.g.*, brick and mortar stores and online) advertise and display MiBs and FPMs side-by-side, and their customers (consumers) cross-shop mattresses in both packaging formats. Confidential Views at 66, Appx124108; Confidential Report at I-14 to I-17, Table IV-5, Table IV-6, Appx124138-124141, 124243, 124246; Mattress Petitioners' Posthearing Brief at Exhibit 1-45 to 1-46, Exhibit 6, Appx114727-114728, 114864-114890.

It is uncontested that subject imports of FPMs compete with US-manufactured FPMs, and that subject imports of MiBs compete with US-manufactured MiBs. Moreover, the Commission also found that MiBs competed with FPMs. Confidential Views at 41-46, Appx124083-124088. For example, despite differences in the relative ratios of MiBs/FPMs sold by the domestic industry and subject imports, the vast majority of responding purchasers reported

that US mattresses were interchangeable with and comparable to mattresses imported from the subject countries.  Confidential Views at 42, Appx124084; Confidential Report at Table IV-14, Table IV-15, Appx124267, 124269.  This is not surprising given that MiBs and FPMs may be made to the same specifications using the same springs and foam, except that innerspring mattresses packaged as MiBs will not have a border wire.  Confidential Views at 42, Appx124084; Confidential Report at I-14 to I-17, Appx124138-124141; Hearing Transcript at 103 (Glassman), 104-05, 124, 137 (Merwin), 138 (Early), Appx12312-12314, 12333, 12346-12347.

The record confirmed functional interchangeability between FPMs and MiBs, once unpackaged, such that consumers often cross-shop MiBs and FPMs, which retailers display side-by-side.  Confidential Views at 42-44, Appx124008-124010; Hearing Transcript at 63-64 (Earley), 116 (Merwin), Appx12272-12273, 12325; Mattress Petitioners' Posthearing Brief at Exhibit 1-45 to 1-46, Exhibit 6, Appx114727-114728, 114864-114890.  As respondents' witness conceded, "We agree that individual consumers often consider both MiBs and FPMs in making their purchasing decisions."  Hearing Tr. at 157 (Douglas), Appx12366.  Indeed, purchasers in their questionnaire responses and consumers in research studies reported packaging as less important than price.  Confidential Views at 43-44, 53, Appx124009-124010, 124019; Confidential Report at Table II-11, Table II-12,

Appx124179-124180; Mattress Petitioners' Posthearing Brief Responses to

Questions at Exhibit 22, Exhibit 23, Appx114979-114991. As further support of

the competition between subject imports of mostly MiBs and domestic shipments

of mainly FPMs, both sources offered similar lead times from inventory, and they

competed with one another through the same distribution channels, primarily to

retailers, in overlapping geographic markets. Confidential Views at 45-46,

Appx124087-124088; Confidential Report at II-31, Table II-4, Table IV-8, Table

D-1, Appx124157-124158, 124177, 124253, 124467-124473.

Accordingly, the Commission reasonably concluded that MiBs are not

significantly different than FPMs, and that the domestic industry shipped

substantial quantities of MiBs and FPMs and had significant unutilized capacity to

make them. The record also confirmed that MiBs and FPMs competed for sales.

B.      The Commission Reasonably Rejected CVB's Segmentation Claims

CVB continues to insist that domestic producers and purchasers are

segmented in terms of packaging. Whereas CVB would have preferred that the

Commission conduct a segmented analysis of the US market, the law does not

require the Commission to follow any particular methodology and instead grants

the Commission broad discretion when choosing its methodologies. *See, e.g.*,

*United States Steel Group v. United States*, 96 F.3d 1352, 1362 (Fed. Cir. 1996).

The Commission correctly rejected CVB's attenuated competition arguments on legal and factual grounds, as explained below. CVB simply asks to impermissibly reweigh the evidence, which this Court recognizes is not its role. *See, e.g.*, *Nippon*, 458 F.3d at 1359.

### 1. CVB misses the point when trying to segment US producers

After defining a single domestic like product consisting of all mattresses regardless of packaging, the Commission defined the corresponding domestic industry as all US producers of the domestic like product in accordance with 19 USC § 1677(4). *See* Confidential Views at 5-25, Appx123971-123991. CVB focuses on the fact that certain US producers specialize in FPMs while others focus on MiBs. CVB's Brief at 10-11, 27-30. If MiBs and FPMs constituted separate domestic like products, this would have warranted separately analyzing injury to the FPM and MiB industries, but CVB did not even advocate for separate domestic like products. CVB otherwise offers no legal basis to examine anything other than injury to the entire domestic mattress industry, let alone to examine a domestic industry manufacturing FPMs separately from a domestic industry manufacturing MiBs. *See* 19 USC §§ 1677(4)(A) (defining the domestic industry as "the producers as a whole of a domestic like product"). The statute obligated the Commission to examine the volume, price effects, and impact of cumulated subject imports on the domestic industry as a whole producing the domestic like product.

*See* 19 USC §§ 1677(4)(A), 1677(7)(B); *see also Cleo Inc. v. United States*, 30 CIT 1380, 1400 (2006) (rejecting the notion that the Commission was required to conduct a segmented injury analysis), *aff'd*, 501 F.3d 1291.

CVB suggests that the Commission treated its attenuated competition claims as an "afterthought." CVB's Brief at 38. In fact, the Commission addressed the claims in several places and would have addressed them sooner, had CVB challenged the definition of the domestic like product and domestic industry. For example, the Commission examined the composition of the domestic industry in its discussion of relevant supply conditions of competition. Confidential Views at 37-39, Appx124003-124005. Noting that it had obtained usable questionnaire data from 53 firms representing the vast majority of domestic mattress production, the Commission observed that "{m}any domestic producers specialize in particular types of mattresses," citing as examples those focusing on certain sizes, cores, or packaging. Confidential Views at 38, Appx124004; Confidential Report at III-1, Appx124193. The Commission also acknowledged that some domestic producers packaged the mattresses as MiBs, some packaged the mattresses as FPMs, and some shipped both types of packaged mattresses. Confidential Views at 38, Appx124004; Confidential Report at III-1 at n.1, Table III-1, Appx124193, 124195-124198. When discussing growth in the domestic industry's investments in capacity, production, and shipments of MiBs, the Commission also referred to

the number and names of individual producers that manufactured FPMs, MiBs, or both. Confidential Views at 38-39, Appx124080-124081; Confidential Report at Table III-1, Table III-5, Appx124195-124198, 124211.

Picking up on language from the CIT, CVB characterizes these references to individual domestic producers as a "statistical gimmick" to give "the impression that more domestic producers manufacture both boxed and flat-packed mattresses." CVB's Brief at 28 (quoting the CIT's opinion at Appx025-27). CVB's argument misses the mark. The Commission addressed the domestic industry as a whole but also recognized variations in the composition over time, including how individual producers increased capacity to manufacture MiBs through additional investments in roll-pack machinery and/or through corporate acquisitions. Confidential Views at 37-39, Appx124003-124005; Confidential Report at Table III-1, Table III-5, Table IV-12, Table VI-6, Appx124195-124198, 124211, 124263, 124370-124372.

In the interest of full transparency, Mattress Petitioners had submitted separate questionnaire data for Tempur Sealy and MiB producer Comfort Revolution, which Tempur Sealy acquired in 2018, and for Leggett & Platt and MiB producer Elite Comfort, which Leggett & Platt acquired in 2019. Confidential Views at 38 & n.156, Appx124004; Confidential Report at Table III-1, Appx124195-124198. This allowed the Commission to treat them as individual or combined entities, if it chose, and to trace their performance to data reported in the

two mattress proceedings with overlapping time periods. Contrary to CVB's assertions, CVB's Brief at 27-30, whether the Commission counts these firms as two, three, or four producers remains irrelevant because that does not change the overall domestic industry's capacity, production, or shipments of MiBs and FPMs in any given period.

Regardless of how CVB counts individual firms as producers of MiBs, FPMs, or both, the statute directs the Commission to focus on the domestic industry as a whole producing the domestic like product. *See* 19 USC §§ 1677(4)(A), 1677(7)(B); *see also Cleo*, 30 CIT at 1400, *aff'd*, 501 F.3d 1291. The domestic industry produced millions of mattresses during the POI, including millions of FPMs and millions of MiBs. Moreover, despite investing in additional roll-packing equipment to produce MiBs, the domestic industry as a whole had substantial unused capacity to produce mattresses, MiB mattresses, and FPM mattresses. Confidential Views at 20-23, 25, 39, 58-59, 70, Appx123986-123989, 123991, 124005, 124024-124025, 124036; Confidential Report at Table III-1, Table III-4, Table III-5, Table C-2, Appx124195-124198, 124207-124208, 124211, 124464-124466. Indeed, even though apparent US consumption of mattresses increased each year from 2017-2019, the domestic industry as a whole reported overall declines in production, shipments, and capacity utilization for mattresses. Confidential Views at 58-59, Appx124024-124025; Confidential Report at Table

III-5, Table C-2, Appx124211, 124464-124466. In short, the Commission went beyond the legal requirement by discussing data trends for the domestic industry as a whole and by discussing changes to specific producers' operations.

## 2. CVB also reweighs the facts to argue purchaser segmentation

CVB seeks to reweigh the facts to argue segmentation of purchasers. The Commission issued questionnaires to 84 mattress purchasers identified by domestic producers, importers, and foreign producers, and 22 purchasers responded.[7] Confidential Report at II-1, II-2, V-80, Appx124147-124148, 124350. The domestic industry and importers of subject merchandise reported selling through the same distribution channels, primarily to retailers, including brick-and-mortar, online, and omni-channel retailers, as well as to end users. Confidential Views at 45, 67, Appx124087, 124109; Confidential Report at Table II-4, Table D-1, Appx124156-124158, 124467-124473. Indeed, the record showed substantial overlap in the lists of top ten purchasers reported by the domestic industry and importers of subject merchandise, as reflected by the vast majority of purchasers (16 of 22) that purchased both US mattresses and subject imports. Confidential Views at 46, Appx124088; Mattress Petitioners' Posthearing Brief at Exhibit 3,

---

[7] As Mattress Petitioners pointed out, even firms that submitted questionnaire data provided incomplete or inconsistent data. Mattress Petitioners' Final Comments at 1-3 (describing [                                    ]), Appx123901, 123903-123905.

Appx114768-114770. For specific accounts, purchasers confirmed that the domestic industry competed against and lost sales to subject imports. Confidential Views at 67, Appx124109.

In other words, differences in the relative FPM/MiB ratios supplied by the domestic industry and subject imports did not preclude overlapping sales to some of the same purchasers. Whereas respondents highlighted advantages of purchasing MiBs, such as the ability to fit more units into a given warehouse or delivery vehicle, many of the largest purchasers, including [

] bought significant volumes of FPMs in addition to MiBs. These firms and [

] (collectively, eleven of the responding purchasers) bought and/or imported both FPMs and MiBs. Confidential Views at 43-44, Appx124085-124086; Confidential Report at II-3, Appx124149; Purchaser Questionnaires at II-1, Appx102825, 102831, 102859, 102865, 102896, 102902, 102929, 102935, 102972, 102977, 103004, 101013, 103042, 103051, 103080, 103086, 103116, 103122, 103149, 103156, 103184, 103190, 103228, 103233, 103262, 103268, 106874, 106881 106882, 107841, 107847 107848, 107875, 107881, 108380, 108386, 108413, 108419, 108861, 108867, 108895, 108900 108901, 111262, 111268, 111471, 111476. Notably, even this overlap at specific purchaser accounts may be diluted due to the fact that the Commission asked firms to report their

purchases of MiBs and FPMs only for a single year, calendar year 2019, months

before the March 2020 petition filings alleging lost sales by the domestic industry

to lower-priced subject imports.  Beyond the data reported by purchasers,

individual domestic producers also reported selling both MiBs and FPMs to the

same purchasers.  Confidential Views at 67, Appx124109; Mattress Petitioners'

Posthearing Brief at Exhibit 1-4, Appx114686.  As the Commission concluded, the

record simply did not support "respondents' contention that purchasers are

committed either to MiBs or FPMs."[8]  Confidential Views at 67, Appx124109.

Moreover, the vast majority of purchasers reported that subject imports were

interchangeable with and comparable to US-manufactured mattresses with respect

to 26 factors that influence purchasing decisions, despite differences in the relative

share of FPMs/MiBs for the domestic industry and subject imports.  Confidential

Views at 41-42, Appx124083-124084; Confidential Report at Table II-14, Table

II-15, Appx124182-124184, 124185-124186.  Further undermining respondents'

claim of purchaser segmentation by packaging, major retailers displayed MiBs and

FPMs side-by-side on their sales floors and e-commerce websites, as the

Commission recognized.  Confidential Views at 44, 67, Appx124086, 124109;

---

[8] CVB now suggests that the Commission concluded that purchasers at the
wholesale level are "indifferent" to packaging, whereas the Commission used this
term when referring to consumers.  Confidential Views at 43.

Hearing Transcript at 63-64 (Earley), 116 (Merwin), Appx12272-12273, 12325;

Mattress Petitioners' Posthearing Brief at Exhibit 4 to Exhibit 6, Appx114771-

114890.  In short, CVB fails to demonstrate the factual or legal meaning of its

claims regarding segmented US producers and purchasers.

C.      Purchasers Consumed More Imported MiBs than US FPMs Due to
        Lower Prices, Not Due to Packaging or Falling Demand for FPMs

CVB attempts to minimize increases in subject imports, which were largely

comprised of MiBs, by emphasizing growing consumption of MiBs during the

POI.  CVB's Brief at 14-17, 39, 44-45.  The record did show increasing

consumption of MiBs, the packaging format of most subject imports, and declining

consumption of FPMs, the packaging format of most domestic mattresses.

Confidential Views at 36, Appx124002; Confidential Report at Table IV-5, Table

IV-6, Appx124243, 124246.  Nonetheless, MiB consumption rose due to the lower

prices of subject imports that happened to be packaged as MiBs, and not due to

increasing demand for MiBs.  Confidential Views at 68, Appx124110.  As

explained below, purchasers and consumers reported price as a more important

purchasing factor than packaging.  Confidential Report at Table II-11,

Appx124152.  Moreover, despite declining consumption of FPMs, a majority of

market participants reported stable or increasing demand for FPMs.  Confidential

Report at Table II-8a, Table II-8b, Table IV-6, Appx124172, 124174, 124246.

Additionally, purchasers still consumed more FPMs than MiBs throughout the

POI.  Confidential Views at 36, Appx124078; Confidential Report at Table IV-5,

Table IV-6, Appx124243, 124246.

>    1. Lower prices and not packaging explains purchasers' increased
>       consumption of MiBs from the subject countries

The Commission asked purchasers to report the top three factors that

influence their purchasing decisions, and "{r}esponding purchasers ranked price

among the top three factors influencing their purchasing decisions, more than any

other factor except quality."  Confidential Views at 44, Appx124086; Confidential

Report at Table II-10, Appx124178.  As the Commission noted, although

purchasers were free to report packaging among their top three purchasing factors,

only two did so, including ([        ]).  Confidential Views at 44, 67, Appx124086,

124109; Purch. QRs at III-26, Appx 102825, 102845, 102859, 102878, 102896,

102915, 102929, 102955, 102972, 102990, 103004, 103028, 103042, 103065,

103080, 103100, 103116, 103135, 103149, 103170, 103184, 103211, 103228,

103248, 103262, 103282, 106874, 106895, 107841, 107861, 107875, 107900,

108380, 108399, 108413, 108432, 108861, 108880, 108894, 108913, 111262,

111281 111282, 111471, 111490.  In addition, the Commission listed 26 factors and

separately asked purchasers to report whether they considered each of these factors

as "very important," "somewhat important," or "not important" to their purchasing

decisions. Confidential Report at Table II-12, Appx124180. More purchasers

reported price as "very important" than reported packaging as "very important,"

and three purchasers even reported packaging as "not important." Confidential

Views at 44, Appx124086; Confidential Report at Table II-12, Appx124180. Other

factors reported to be "very important" by purchasers included availability, quality,

delivery time, and reliability of supply, but purchasers reported US and subject

imports as "comparable" for these factors, increasing the importance of price

differentials. Confidential Report at Table II-12, Appx124180. Unlike price, the

Commission pointed out that on-line mattress retailers such as Amazon.com and

AshleyFurniture.com do not provide search filters for packaging, further

diminishing the role of packaging in purchasing behavior for mattresses.

Confidential Views at 43, Appx124085; Mattress Petitioners' Posthearing Brief at

4, Exhibit 6, Exhibit 21, Appx114658, 114864-114890, 114485-114487.

Furthermore, twenty purchasers reported at least sometimes, if not usually or

always buying the lowest-priced mattresses, and domestic industry witnesses

testified that competition in the US market is primarily based on price.

Confidential Views at 44-45, Appx124086-124087, Confidential Report at II-33,

Appx124179; Hearing Tr. at 26 (Glassman), 33 (Merwin), 40 (Earley), 43 (Fallen),

50 (Koltun), Appx12235, 12242, 12249, 12252, 12259. Based on this evidence,

the Commission reasonably characterized price as "an important consideration in

purchasing decisions, among other factors" without deeming packaging to be as influential.  Confidential Views at 49, Appx124091.

Overall, responding purchasers reduced their purchases from the domestic industry by 31.2 percent from 2017-2019 and increased their purchases of subject imports by 27.4 percent.  Confidential Views at 52, Appx124094; Confidential Report at Table V-22, Appx124351.  As part of its standard questionnaire, the Commission asked purchasers if they bought mattresses from the subject countries instead of mattresses made in the United States, whether subject imports were lower priced than the domestic like product, and if so whether price was a primary reason for their switch from the domestic industry to subject imports.  Of the purchasers reducing their domestic industry purchases and increasing purchases of subject imports, seven reported lower prices for subject imports, one did not respond to that part of the question, and two reported lower price as a primary reason for their switch.  Confidential Views at 52, Appx124094; Confidential Report at V-80, Table V-22, Appx124350-124351.  Furthermore, [     ] of the firms that shifted from domestic mattresses to subject imports from 2017-2019 ranked price, cost, or profitability among the top three factors influencing their purchasing decisions, and five also reported price to be a "very important" purchasing factor.  Confidential Views at 52-53 at n.225, Appx124094-124095; Purchaser QRs at III-26, III-27, Appx102972, 102990, 103005, 103028, 103080,

103100, 103116, 103228, 103248, 103262, 103282, 107841, 107861, 103135.

Five of the seven firms that shifted from domestic mattresses to subject imports

purchased both FPMs and MiBs.  Confidential Views at 68, Appx124110.  Thus, it

was reasonable for the Commission to conclude, based on the record, that lower

prices and not packaging explained the increased consumption of MiBs imported

from the subject countries at the expense of decreased consumption of FPMs.

2. <u>Lower prices of MiBs from the subject countries and not lower
demand for FPMs explained increased consumption of MiBs</u>

CVB attempts to minimize increases in subject imports that largely consisted

of MiBs by emphasizing growing consumption of MiBs during the POI.  The

record did show increasing consumption of MiBs, the packaging format of most

subject imports, and declining consumption of FPMs, the packaging format of

most domestic mattresses.  Confidential Views at 36, Appx124078; Confidential

Report at Table IV-12 to Table IV-15, Appx124262-124269.  Consumption does

not always mean demand, however, and the record showed that lower MiB prices

and not declining demand for FPMs explained increased consumption of MiBs.

Questionnaire data did not show declining demand for FPMs, with most

purchasers at the retail level reporting stable to increasing demand.  Confidential

Report at Table II-8a, Table II-8b, Appx124172, 124174.  Moreover, consumption

of FPMs exceeded consumption of MiBs throughout the POI, despite increasing

consumption of MiBs. Confidential Views at 36, Appx124078; Confidential Report at Table IV-5, Table IV-6, Appx124243, 124246. The Commission thus asked for evidence to support respondents' assertion that "consumer-driven reasons" explained increased consumption of MiBs. As the Commission noted, respondents failed to provide such evidence. Confidential Views at 43 at n.179, Appx124085. Instead, the information submitted by Mattress Petitioners rebutted respondents' theory. Specifically, research studies about factors driving mattress purchases confirmed that consumers rank packaging among the least important factors in their mattress buying decisions. Confidential Views at 43 at n.179, 53, Appx124085, 124095; Mattress Petitioners' Posthearing Brief at Exhibit 22, Exhibit 23, Appx114488-114499.

Thus, the record confirmed that purchasers and consumers bought increasing volumes of MiBs due to their lower prices, and not due to packaging or declining demand for FPMs. The domestic industry as a whole lost market share to subject imports, including when subject imports of MiBs sold at lower prices than comparable domestically produced FPMs, given the greater importance of price over packaging reported by purchasers and consumers. Confidential Views at 43 at n.179, 68, Appx124085, 124110; Confidential Report at II-33, Table II-11, Table IV-12 to Table IV-15, Appx124179, 124263-124269; Mattress Petitioners' Posthearing Brief at Exhibit 22, Exhibit 23, Appx114488-114499.

## III.    The Commission Reasonably Found Harm to US MiB Producers

In light of its definition of one domestic like product and corresponding single domestic mattress industry as well as evidence demonstrating competition between MiBs imported from the subject countries and domestically produced FPMs, the Commission based its "impact analysis entirely on the domestic industry as a whole" and did not find it appropriate or instructive to focus on subject imports' impact on domestic MiB producers.  Confidential Views at 5-25, 69, Appx123971-123991, 124035.  Nevertheless, the Commission also went beyond what the factual record necessitated and what the legal standard required by explaining why "subject imports also had an impact on domestic producers that exclusively produced MiBs."  Confidential Views at 69, Appx124035.  The CIT characterized the use of statistics regarding the domestic industry's composition and purchasers' buying behavior in the first 66 pages of the Commission's analysis as "legerdemain" and would not have affirmed had the Commission not also included an explanation of injury to domestic MiB producers.  *CVB Inc. v. United States*, 675 F. Supp. 3d at 1334, 1343-1347.  For its part, the Commission considered the passages involving the statistics as "very inarticulately written" but at most harmless error.  Ultimately, the Court agreed.  *Id*. at 1343-47.

A.    CVB Wants to Reweigh Evidence of Harm to MiB Producers

According to CVB, the data indicate "a tale of two trends," with declining performance for US FPM producers that it alleges faced little import competition and improving capacity, production, and shipments for US MiB producers that it asserts competed directly with subject imports, which were comprised mainly of MiBs.  CVB's Brief at 15.  CVB refers to US MiB producers as "healthy," and characterizes any losses as "limited to the FPM segment, where market demand has been in decline for several years because of shifts in consumer preferences, not because of subject imports."  *Id.* at 39.  This Court should reject CVB's attempt to reweigh the evidence.  *Nippon*, 458 F.3d at 1359

Again, as explained in sections II.A to II.B above, CVB did not argue for a separate domestic like product or domestic industry, the prerequisite showing for CVB's current request for the Commission to separately examine the volume, price effects, and impact of MiBs from the subject countries on US MiB producers.  CVB's Brief at 40-41.  Nevertheless, the Commission acknowledged that most MiB producers' performance indicators improved, consistent with increased US shipments of MiBs and the "substantial investments in MiB capacity" undertaken by domestic producers.  Confidential Views at 69-70, Appx124035-124036.  Moreover, the Commission did discuss the volume, price effects, and impact of MiB imports from the subject countries on US MiB producers.

As the Commission noted, in a period of increasing US consumption of MiBs and despite increasing US shipments of MiBs, domestic MiB producers reported capacity utilization of 57.2 percent in 2017, 62.0 percent in 2018, 60.3 percent in 2019, 64.7 percent in interim 2020, and 49.8 percent in interim 2020.[9] Confidential Views at 70, Appx124036; Confidential Report at Table III-5, Appx124211. Specific domestic MiB producers reported that subject imports adversely impacted the returns on their investments. Confidential Views at 72 & n.313, Appx124038. Moreover, while the suppliers of MiBs changed from Chinese manufacturers to manufacturers from the other subject countries following the first AD petition, combined imports of MiBs from all subject countries still managed to increase every year between 2017 and 2019. Confidential Views at 71, Appx124037; Confidential Report at F-39 to F-42, Appx124529-124532. The record showed widespread underselling of US-manufactured MiBs by MiBs imported from the subject countries, whether measured through traditional price-to-price comparisons or by comparing domestic prices to subject imports'

---

[9] CVB characterizes the increases in MiB capacity utilization as a strength because they occurred during a time of increasing MiB capacity, CVB's Brief at 43-45, but even at its peak, 64.7 percent can hardly be deemed "healthy." CVB also suggests that the Commission did not consider the impact of raw materials on capacity utilization, CVB's Brief at 45-47, but the Commission expressly considered raw materials and why they did not explain the injury. Confidential Views at 46-47, Appx124012-124013.

landed duty paid costs, and the record also confirmed an overall decline in domestic prices for MiB pricing product 3 and MiB pricing product 5.[10] Confidential Report at V-12, V-19, V-25, V-28, V-43, V-48, V-54, Appx124282, 124289, 124295, 124298, 124318, 124324. Indeed, subject imports of MiBs increased their share of overall apparent US consumption by more than US-produced MiBs increased their market share from 2017 to 2019 and between interim periods. Confidential Views at 71, Appx124037; Confidential Report at F-5 (domestic industry's MiB market share increased [       ] percentage points from 2017-2019 and [       ] percentage points in interim periods), F-41 (subject imports' MiB market share increased [       ] percentage points from 2017-2019 and [       ] percentage points in interim periods), Appx124495, 124531. As a result, domestic MiB producers "could have had greater sales revenues and operating and net income than they did during the period of investigation but for subject import competition." Confidential Views at 71-72, Appx124037-124038.

For these reasons, the Commission reasonably concluded that some of the domestic MiB producers' performance factors improved less than they otherwise

---

[10] CVB offers no explanation for further dissecting the pricing data pertaining to MiB sales by segregating pricing data from China and Vietnam in a case where, as noted, CVB did not challenge cumulation but instead advocated for cumulating China with other subject imports as noted in section III of the Statement of the Case.

would have "but for the significant volume and increase in volume of low-priced

subject imports that displaced domestic industry shipments from the US market

and depressed domestic like product prices to a significant degree, including the

prices of MiB products."  Confidential Views at 70, Appx124036.

B.  The Commission Did Not Need to Discuss Data for Individual US
     Producers, and Any Ambiguity in that Discussion is Harmless

CVB disputes the CIT's decision to affirm, without a remand, on the basis of

the final four pages of the Commission's analysis, suggesting that the Commission

committed prejudicial errors and might have reached a different conclusion.

CVB's Brief at 48-53.  As explained in Section II.B, however, the Commission did

not even need to address performance trends for individual US producers that

merged with other US producers while the investigations were pending.  The

Commission merely needed to discuss data pertaining to the domestic industry as a

whole.  The Commission did attempt to call attention to how it computed the data

that CVB now refers to as "manipulated" in the passages on page 38 and footnote

156 of its Confidential Views.  While this discussion may have been inartful, it was

not deliberately misleading.  At most, the discussion was harmless error, as the CIT

ultimately concluded.  CVB cannot point to any evidence showing that the

Commission might have reached a different result – negative injury determinations

– had it calculated the figures at issue differently.

## CONCLUSION

For the reasons explained herein, we respectfully request that this Court affirm the CIT's decision affirming the Commission's affirmative final determination as supported by substantial evidence and otherwise in accordance with law.

Respectfully submitted,

/s/ Mary Jane Alves

Yohai Baisburd
Mary Jane Alves
Chase Dunn
Nicole Brunda
Margaret Monday
Sydney Reed
CASSIDY LEVY KENT (USA) LLP
2112 Pennsylvania Avenue, Suite 300
Washington, DC 20037
Phone: (202) 567-2300
Fax: (202) 567-2301

September 30, 2024          *Counsel to Mattress Petitioners*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  2024-1504, 2024-1566

**Short Case Caption:**  CVB, Inc. v. US

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes ___10,665___ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 09/30/2024

Signature:  /s/ Mary Jane Alves

Name:  Mary Jane Alves

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2024-1504, 2024-1566

**Short Case Caption:** CVB, Inc. v. US

---

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains _____25_____ number of unique words (including numbers) marked confidential.

☐ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☑ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 09/30/2024

Signature: /s/ Mary Jane Alves

Name: Mary Jane Alves

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 2024-1504, 2024-1566

**Short Case Caption** CVB, Inc. v. US

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on _____

by ☐ U.S. Mail  ☐ Hand Delivery  ☒ Email  ☐ Facsimile
☐ Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Geoffrey Myles Goodale, Esq | gmgoodale@duanemorris.com |
| Jane Dempsey, Esq. | Jane.Dempsey@usitc.gov |
| Andrea C. Casson | andrea.casson@usitc.gov |
|  |  |
|  |  |

☐ Additional pages attached.

Date: 09/30/2024

Signature: *Mary Jane Alves*

Name: Mary Jane Alves

Save for Filing