Nos. 24-1504, 24-1566

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

**CVB, INC.,**

*Plaintiff-Appellant,*

v.

**UNITED STATES,**

*Defendant-Cross-Appellant,*

**BROOKLYN BEDDING, LLC, CORSICANA MATTRESS CO., ELITE COMFORT SOLUTIONS, FXI, INC., INNOCOR, INC., KOLCRAFT ENTERPRISES, INC., LEGGETT & PLATT, INC., INTERNATIONAL BROTHERHOOD OF TEAMSTERS, UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO,**

*Defendants-Appellees.*

Appeal from the United States Court of International Trade
Case No. 1:21-cv-00288-SAV, Hon. Stephen A. Vaden

# CORRECTED BRIEF OF *AMICUS CURIAE* THE INTERNATIONAL TRADE COMMISSION TRIAL LAWYERS ASSOCIATION IN SUPPORT OF DEFENDANT-CROSS-APPELLANT UNITED STATES AND REVERSAL OF THE COURT OF INTERNATIONAL TRADE ORDER DENYING THE JOINT MOTION TO RETRACT THE COURT'S PUBLIC SLIP OPINION AND ACCORD CONFIDENTIAL TREATMENT TO ALLEGED BUSINESS PROPRIETARY INFORMATION CONTAINED THEREIN

David H. Hollander
Mintz, Levin, Cohn, Ferris, Glovsky
and Popeo, P.C.
555 12th Street NW, Suite 1100
Washington, DC 20004
(202) 434-7300

George C. Summerfield
K&L Gates LLP
70 West Madison Street
Chicago, Illinois 60602
(312) 807-4376

Attorneys for *Amicus Curiae*
International Trade Commission Trial Lawyers Association

Dated: October 16, 2024

FORM 9. Certificate of Interest | Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-1504, 24-1566

**Short Case Caption** CVB, Inc. v. US

**Filing Party/Entity** International Trade Commission Trial Lawyers Association

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/16/2024　　Signature: /s/ George C. Summerfield

　　　　　　　　　　Name: George C. Summerfield

FORM 9. Certificate of Interest                                           Form 9 (p. 2)
                                                                          March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| International Trade Commission Trial Lawyers Association | | |

☐    Additional pages attached

FORM 9. Certificate of Interest                                Form 9 (p. 3)
                                                               March 2023

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable  ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)  ☐ No  ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable  ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

## TABLE OF CONTENTS

**STATEMENT OF THE IDENTITY OF *AMICUS CURIAE*, ITS INTEREST IN THE CASE, AND THE SOURCE OF ITS AUTHORITY TO FILE** .................1

**ARGUMENT** ........................................................................................................3

    **I.**    Procedural Background.............................................................................3

    **II.**   The Importance of Confidential Information to ITC Proceedings........4

    **III.**  The Established Treatment of Confidential Information in Section 337 Proceedings..........................................................................................5

    **IV.**  Making Public Information Designated as Confidential .......................8

    **V.**   Conclusion.............................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Certain Liquid Coolers for Electronic Components in Computers, Components Thereof, Devices for Controlling Same, and Products Containing Same*,
   Inv. No. 337-TA-1394, Order No. 1 (U.S.I.T.C. March 21, 2024) .......................... 7

*Certain L-Lysine Feed Products, Their Methods of Production and Genetic Constructs Production*,
   Inv. No. 337-TA-571, Order No. 4 (July 7, 2006) .......................................... 4, 10

*CVB, Inc. v. United States*,
   675 F. Supp.3d 1324 (C.I.T. Dec. 19, 2023) ............................................ 3, 8, 9, 10

*TCVB, Inc. v. United States*,
   681 F.Supp.3d 1313 (C.I.T. 2024) ........................................................... 3

**Statutes**

19 C.F.R. § 201.6(a)(1) ........................................................................ 8
19 C.F.R. § 201.6(d) ........................................................................... 6
19 C.F.R. § 201.6(e)(1) ........................................................................ 6
19 C.F.R. § 201.6(f)(1) ........................................................................ 6
19 C.F.R. § 201.6(g) ........................................................................... 6
19 C.F.R. § 210.34(a)(7) ....................................................................... 6
19 U.S.C. § 1337(n)(1) ......................................................................... 6
Court Int'l Trade R. 73.2(c) .................................................................. 11

## STATEMENT OF THE IDENTITY OF *AMICUS CURIAE*, ITS INTEREST IN THE CASE[1], AND THE SOURCE OF ITS AUTHORITY TO FILE[2]

A nonprofit, nonpartisan educational organization founded in 1984, the International Trade Commission Trial Lawyers Association ("ITCTLA") is an association of private practice, corporate, and government lawyers concerned with practice under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337"). It has over 250 members worldwide. As its website explains, "[t]he ITCTLA is dedicated to improving the administration of Section 337 and informing attorneys, international trade officials, and legislators about practice before the ITC." https://itctla.org/. "ITCTLA members confer regularly to review developments affecting Section 337 practice."

The issue addressed herein is the need for a clear and predictable method for declassifying confidential information produced by parties to proceedings before administrative agencies, such as the United States International Trade Commission ("ITC"). Given their involvement in Section 337 litigation, the ITCTLA membership is particularly sensitive to the need to ensure the protection of confidential information. In virtually every case brought before the ITC under Section 337, parties – and particularly parties located overseas – are asked to produce

---

[1] No government employee who is a member of the U.S. International Trade Commission Trial Lawyers' Association participated in the preparation of this *Amicus* brief.

[2] The ITCTLA requested and received consent from the parties to file the instant brief.

1

their confidential information. Their legal representatives must convince them that the ITC is committed to ensuring that such information is protected, and that there are set procedures for ensuring that protection. As such, the ITCTLA is particularly suited to weighing in on this issue of how confidential information is treated in matters pending before an administrative proceeding.

## ARGUMENT

### I. Procedural Background

This matter ultimately comes to this Court by way of a petition for issuance of antidumping and countervailing duties filed with the ITC. *CVB, Inc. v. United States*, 675 F. Supp.3d 1324, 1329 (C.I.T. Dec. 19, 2023). The ITC issued its final decision finding injury to a domestic industry, and the appellant in the instant appeal filed a complaint with the Court of International Trade ("CIT"). *See id.* at 1333. The CIT sustained the ITC's injury determination. *Id.* at 1347.

After the CIT issued its decision, the ITC expressed "concerns that the opinion revealed confidential business proprietary information" of third parties. *Id.* at 1316. The ITC then filed a motion asking the CIT to "issue a new confidential opinion with forty-four sets of brackets in place of information contained in the original" opinion. *Id.* at 1317. Judge Vaden denied the ITC's request for two reasons: 1) the ITC had failed to abide by the controlling rule in designating information as public, and therefore the "information is not confidential;" and 2) the subject information was purportedly "publicly available." *See id.* The CIT then added the notion of "transparency" as a reason for denying confidential treatment for the subject information and disclosing it publicly. *Id.* at 1321-23.

After the CIT issued its ruling, the ITC moved the CIT to accord confidential treatment to the business proprietary information contained in that ruling. *See TCVB, Inc. v. United States*, 681 F.Supp.3d 1313, 1315 (C.I.T. 2024). In denying

the motion Judge Vaden reiterated his reasons for having declassified the subject information in the first place. *See id.* at 1318-23.

The result is that Judge Vaden, of his own volition, and without the input of the producing third parties, publicized information produced by such parties under a claim of confidentiality, despite a request from the ITC not to do so, and despite there having been no request from any party to such proceedings to do so.

## II.     The Importance of Confidential Information to ITC Proceedings

While it should not be controversial proposition, it is important to reiterate in this context that the ITC's ability to maintain the confidentiality of a party's information designated as such is essential to the ITC's ability to carry out its adjudicative function. *See, e.g., Certain L-Lysine Feed Products, Their Methods of Production and Genetic Constructs Production*, Order No. 4 (July 7, 2006) ("*L-Lysine Feed Products*") at 4 ("effective resolution of Section 337 investigation requires the voluntary submission of highly sensitive business information and the importance of maintaining the confidentiality of the information sought").

Equally important to the process is the adherence to procedures governing the maintenance of information in confidence to provide comfort to a producing party that such information will not be published by the ITC – or courts – willy-nilly. *See* USITC, *An Introduction to Administrative Protective Order Practice in Import Injury Investigations* (4th ed. March 2005) (available at https://www.usitc.gov/secretary/ apo/pub3755.pdf) at 1 (the ITC holds confidential

4

information "in strict confidence and does not publish such information in ways that would reveal the operations of individual firms without the consent of the submitter"); *id.* (access to confidential information is "permitted subject to an administrative protective order" the process for which is "governed by statute and the [ITC's] rules").

With all of that said, the ITCTLA takes no position on whether the information at issue below was, in fact, confidential. Rather, the ITCTLA seeks to make known its position that information designated as confidential by a producing party to any action before the ITC cannot later be made public *sua sponte* by an adjudicative officer without following the process to receive and consider input from the producing party. As explained below, to alleviate a producing party's concerns, established procedures for handling confidential information, and specifically the disclosure and declassification of such information, must be followed.

## III. The Established Treatment of Confidential Information in Section 337 Proceedings

Congress, cognizant of the importance of the treatment of confidential information, specified in the statute itself that:

> Information submitted to the Commission or exchanged among the parties in connection with proceedings under this section which is properly designated as confidential pursuant to Commission rules may not be disclosed (except under a protective order issued under regulations of the Commission which authorizes limited disclosure of such information) to any person (other than a person described in paragraph (2)) without the consent of the person submitting it.

5

19 U.S.C. § 1337(n)(1).

The ITC, for its part, has propounded a regulation applicable to all of its proceedings providing that "[a]pproval or denial of requests" for confidential treatment of submissions "shall be made only by the Secretary or Acting Secretary" of the ITC. 19 C.F.R. § 201.6(d). "For good cause shown," the full Commission "may grant an appeal from a denial by the Secretary of a request for confidential treatment of a submission." 19 C.F.R. § 201.6(e)(1). Conversely, "the Commission may grant an appeal from an approval by the Secretary of a request for confidential treatment of a submission." 19 C.F.R. § 201.6(f)(1). In either case, "[i]n the event that any business information submitted to the Commission is not entitled to confidential treatment, the submitter will be permitted to withdraw the tender within five days of its denial of confidential treatment." 19 C.F.R. § 201.6(g).

Separately, Rule 210.34(a)(7) provides for the issuance of protective orders providing "[t]hat a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." 19 C.F.R. § 210.34(a)(7). Pursuant to this rule, a presiding ALJ will promulgate a protective order in a Section 337 investigation, usually as the very first administrative order issued within days of assignment of such investigation to the ALJ. *See, e.g., Certain Liquid Coolers for Electronic Components in Computers, Components Thereof, Devices for Controlling Same, and Products Containing Same*, Inv. No. 337-TA-1394, Order No. 1 (U.S.I.T.C. March 21, 2024) (Cheney, Chief

ALJ). Protective orders will typically contain a definition of "confidential business information," and example of which calls out, *inter alia*, information:

> [T]he disclosure of which is likely to have the effect of either (i) ***impairing the Commission's ability to obtain such information as is necessary to perform its statutory functions***; or (ii) causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained . . .

*Id.* at 1, ¶ 1 (emphasis added).

While a protective order may provide that the ALJ or Commission can rule that information is not confidential, the producing party will be afforded an opportunity "to argue its confidentiality prior to the time of such ruling." *Id.* at 2, ¶ 2(b). Otherwise, a protective order will typically provide that, except for specific categories of individuals involved in an investigation, "[i]n the absence of written permission from the supplier or an order by the Commission or the Administrative Law Judge, any confidential documents or business information . . . shall not be disclosed to any person," or some similar provision. *See id.* at 2, ¶ 3.

There is nothing in Section 337 itself, the regulations associated with that statute, or the typical Section 337 protective order that allows for an ALJ or the full Commission to rule that information is not confidential without providing an opportunity to the producing party to weigh in on the confidential nature of the subject information or withdraw such information. Only by allowing a producing party to have a substantial say in how its confidential information is to be treated can the ITC ensure that information necessary to the effective adjudication of Section

7

337 investigations will be produced. The *sua sponte* declassification of information by the CIT in the proceeding below, if allowed to occur in Section 337 proceedings, would risk undermining such effective adjudication.

### IV. Making Public Information Designated as Confidential

As noted above, the CIT rejected a request by the ITC to treat information publicized in his opinion as confidential. The first reason he gave was that the ITC had failed to designate confidential information properly, concluding that, as a result, such information was not confidential.[3] *CVB*, 675 F. Supp.3d at 1317. This dubious proposition presupposes that confidential information cannot be inadvertently mis-designated. That presupposition is inconsistent with the regulatory definition of "confidential business information," which focuses entirely upon the nature of such information, *e.g.*, likely to have the effect of "impairing the Commission's ability to obtain" confidential information, as opposed to whether the information is expressly marked as "confidential." *See* 19 C.F.R. § 201.6(a)(1). In any event, according to the ruling below, confidential information without a technically complete designation is automatically made public without any ability by the producing party to redress the situation.

---

[3] While the ITC apparently misapplied brackets designating information as confidential, it had affixed a "business proprietary" label to the pages containing such information. *CVB*, 675 F. Supp.3d at 1318. Judge Vaden ruled that such a blanket designation could not save the subject information from being publicized.

8

The second basis for Judge Vaden's ruling was that, in his opinion, the information was public. *CVB,* 675 F. Supp.3d at 1317. His conclusion was based upon his own search of the Internet to determine what among the purported confidential information was available there. *Id.* at 1320. Again, the actual producing parties had no ability to weigh in on whether the information obtained in a vacuum from the Internet was the same as the purported confidential information produced in the ITC proceeding, or whether its confidential nature was dependent on the context of the dispute and related confidential information on the record.

The ruling below, if it is allowed to stand, risks the ITC's ability to obtain confidential information from parties. Given that ruling, the inadvertent omission of a bracket specifically identifying the confidential information on a page of text otherwise designated "confidential" risks the publication of that party's most confidential information, even if it is someone other than the producing party that omits that designation. Further, even if designated in a complete and full way, the Court below would find unilaterally that such information may be publicized if a decision maker determines that the information is somehow publicly available.

In light of the decision below, a producing party may legitimately feel that it loses all control over its confidential information once it is produced in an ITC proceeding. That loss of control is irrespective of the ITC's afore-referenced express regulatory provisions for a producing party's opportunity to be heard on the issue of confidentiality, and for a producing party's ability to withdraw information that is

9

denied confidential treatment. This loss of control may well risk the ITC's ability to perform its adjudicative function, which depends upon the production of confidential information. *See, e.g., L-Lysine Feed Products* at 4.

And that brings us to the final point made by the CIT regarding the virtues of transparency. *See CVB,* 675 F. Supp.3d at 1321-22. The CIT extols the benefits of making legal proceedings public, analogizing such publicity to students taking a math test being "expected to show their work." *See id.* at 1321. There is absolutely no merit to this comparison. In the first instance, ITC proceedings are, in fact, public, and the ITC's reasoning is apparent in its determinations. Only sensitive aspects of the proceedings are confidential. And of course, unlike parties in an ITC proceeding claiming confidentiality for certain information, students do not risk severe economic consequences from disclosing their math test answers.

If producing parties become concerned about the publication of their most well-guarded information in the name of transparency, they will inevitably resist producing that information. Risking the ITC's adjudicative capability for vague "transparency" reasons throws the baby out with the bath water. At the very least, even if transparency mandates making public as much information as possible, the decision of where to draw that line ***must*** be made with input from the producing party, which inevitably is in the best position to explain the basis for any claimed confidentiality.

10

Finally, the ITCTLA is cognizant of the fact that the CIT operates under its own set of rules. Those rules provide, in relevant part, that "any document, comment, or information that is accorded confidential or privileged status by the agency whose action is being contested and that is required to be filed with the clerk of the court, ***must*** be filed under seal." Court Int'l Trade R. 73.2(c) (emphasis added). There is no provision for the CIT second-guessing the confidential designation conferred by an agency, particularly based solely upon an Internet search conducted by a judge *sua sponte*. And, given the mandatory nature of Rule 73.2(c), the appropriate remedy for an ineffective confidentiality designation is to correct the designation, rather than to deem the information public, as Judge Vaden did.

## V.   Conclusion

A recurring theme herein is that the ITC's ability to perform its adjudicative function pursuant to Section 337 depends upon its ability to obtain confidential information from private parties. That ability turns on the producing parties' confidence that such information will remain confidential, or, at the very least, that they will have an opportunity to be heard prior to any publication of such information. Once that confidence is destroyed, so is the ITC's adjudicative capability under Section 337. The *CVB* decision, even though related to antidumping and countervailing duties, risks that confidence and that ability, as it sets a precedent allowing a judge to declassify *sua sponte* information produced in connection with an ITC proceeding without regard to what the producing party has

11

to say on the matter. The decision should therefore be vacated and remanded, with an instruction to conduct further proceedings consistent with such *vacatur*.

Dated: October 16, 2024                    Respectfully submitted,

*/s/ George C. Summerfield*
George C. Summerfield
K&L Gates LLP
70 West Madison Street
Chicago, Illinois 60602
(312) 807-4376

David H. Hollander
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
555 12th Street NW, Suite 1100
Washington, DC 20004
(202) 434-7300

Attorneys for *Amicus Curiae*
International Trade Commission
Trial Lawyers Association

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 24-1504, 24-1566

**Short Case Caption:** CVB, Inc. v. US

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes __2,564__ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 10/16/2024

Signature: /s/ George C. Summerfield

Name: George C. Summerfield

Save for Filing