**2024-1504, 2024-1566**

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

**CVB, INC.,**

*Plaintiff-Appellant*

v.

**UNITED STATES,**

*Defendant - Cross-Appellant*

**BROOKLYN BEDDING, LLC, CORSICANA MATTRESS CO., ELITE COMFORT SOLUTIONS, FXI, INC., INNOCOR, INC., KOLCRAFT ENTERPRISES, INC., LEGGETT & PLATT, INC., INTERNATIONAL BROTHERHOOD OF TEAMSTERS, UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO,**

*Defendants - Appellees*

---

Appeal from the United States Court of International Trade in
Case No. 1:21-cv-00288-SAV, Judge Stephen A. Vaden

---

**CORRECTED BRIEF OF *AMICUS CURIAE*
CUSTOMS AND INTERNATIONAL TRADE BAR ASSOCIATION
IN SUPPORT OF DEFENDANT – CROSS-APPELLANT UNITED STATES
AND REVERSAL OF THE COURT OF INTERNATIONAL TRADE
ORDER DENYING THE JOINT MOTION TO RETRACT THE COURT'S
PUBLIC SLIP OPINION AND ACCORD CONFIDENTIAL TREATMENT
TO ALLEGED BUSINESS PROPRIETARY INFORMATION CONTAINED
THEREIN**

---

DEANNA TANNER OKUN
TREASURER
CUSTOMS AND INTERNATIONAL
TRADE BAR ASSOCIATION
Polsinelli PC
1401 Eye Street NW
Washington, DC 20005
Telephone: (202) 626-8329

BROOKE RINGEL
CO-CHAIR, MEMBERSHIP
COMMITTEE
CUSTOMS AND INTERNATIONAL
TRADE BAR ASSOCIATION
Kelley Drye & Warren LLP
3050 K Street NW
Washington, DC 20007
Telephone: (202) 342-8516

*Counsel for Amicus Curiae Customs and International Trade Bar Association*

October 25, 2024

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number**    24-1504 & 24-1566

**Short Case Caption**    CVB, Inc. v. United States, et al.

**Filing Party/Entity**    The Customs and International Trade Bar Association ("CITBA")

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/07/2024

Signature:    /s/ Deanna Tanner Okun

Name:    Deanna Tanner Okun

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| The Customs and International Trade Bar Association ("CITBA") | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable                      ☑    Additional pages attached

| See Attachment A | | |
|---|---|---|
| | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑    Yes (file separate notice; see below)      ☐    No      ☐    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable                      ☐    Additional pages attached

| | | |
|---|---|---|
| | | |

# Attachment A

## Attachment A to Certificate of Interest

The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

*Appearing before this Court:*

**POLSINELLI PC**
Deanna Tanner Okun, Shareholder

**Kelley Drye & Warren LLP**
Brooke Ringel, Partner

**FedEx Corporation**
Emily Beline

# TABLE OF CONTENTS

STATEMENT OF INTEREST .................................................................1

INTRODUCTION ...............................................................................2

ARGUMENT ......................................................................................6

  I.  THE LEGAL FRAMEWORK FOR THE PROTECTION OF
CONFIDENTIAL INFORMATION BALANCES TRANSPARENCY AND
PARTICIPATING ENTITIES' INTERESTS UNDER THE TRADE
REMEDIES STATUTE ..................................................................6

    A.  The Statutory and Regulatory Regime........................................6

    B.  Congress Intended for the Confidentiality Provisions of the Statute to Cure
a Lack of Transparency in Commission Proceedings ..............................11

  II.  COUNSEL RELY ON THE STATUTE'S CONSENT REQUIREMENT TO
OBTAIN INFORMATION FROM COMPANIES THAT WOULD
OTHERWISE NOT PROVIDE SUCH INFORMATION............................17

  III. INPUT FROM THE SUBMITTER ON THE NATURE AND CONTEXT
OF THE INFORMATION IS CRITICAL TO ASSESSING
CONFIDENTIALITY ..................................................................24

CONCLUSION ...................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Akzo N.V. v. U.S. Int'l Trade Comm'n,*
  808 F.2d 1471 (Fed. Cir. 1986) ...................................................................18

*CVB, Inc. v. United States,*
  681 F. Supp. 3d 1313 (Ct. Int'l Trade 2024) ..........................................2

*Hebei Golden Bird Trading Co. v. United States,*
  2017 WL 3017099 (Ct. Int'l Trade July 17, 2017).............................19

*Hyundai Pipe Co., Ltd. v. U.S. Dep't of Commerce,*
  11 CIT 238 (1987) ...................................................................................18

*Kemira Fibres Oy v. United States,*
  858 F. Supp. 229 (Ct. Int'l Trade 1994) .............................................17

*U.S. Int'l Trade Comm'n v. Tenneco West,*
  822 F.2d 73 (D.C. Cir. 1987)................................................................21

*United States Steel Corp. v. United States,*
  730 F.2d 1465 (Fed. Cir. 1984) ..........................................................14

**Statutes**

19 C.F.R. § 201.6 ......................................................................... 17, 30

19 C.F.R. § 201.6(a)(1)...................................................................8

19 C.F.R. § 201.6(b) .......................................................................8

19 C.F.R. § 201.6(d)......................................................................20

19 C.F.R. § 201.6(g) ............................................................ 8, 19, 21

19 C.F.R. § 207.7(g)(2), (4).........................................................22

19 U.S.C. § 1333(a) ..................................................................6

19 U.S.C. § 1516a(b)(2)(B) ....................................................16

19 U.S.C. § 1677f..................................................................13

19 U.S.C. § 1677f(a)(4)(A) ......................................................4

19 U.S.C. § 1677f(b)(1)(A) ................................................ 7, 19

19 U.S.C. § 1677f(b)(2) .................................................. 8, 21, 22

19 U.S.C. § 1677f(c)(1) ............................................................4

19 U.S.C. § 1677f(c)(1)(B) ....................................................20

28 U.S.C. § 2635(b)(1)(A)-(B) ..............................................21

**Other Authorities**

*A Centennial History of the United States International Trade Commission*,
   USITC Pub. 4744 (Nov. 2017) ............................................12

*Antidumping and Countervailing Duty Handbook*,
   USITC Pub. 4540 (June 2015).......................................... 9, 10

*Omnibus Trade and Competiveness Act of 1988*,
   H.R. Rep. No. 100-576 (1988) ...................................... 14, 15

H.R. Rep. No. 96-317 (1979)..................................................14

*Omnibus Trade Act of 1987*
   S. Rep. No. 100-71 (June 11, 1987) ..................... 7, 14, 15, 16

*Trade Agreements Act of 1979,*
   S. Rep. No. 96-249 (1979)................................. 11, 14, 16, 17

*Trade Agreements Act of 1979,*

Pub. L. No. 96-39 (1979) ..........................................................................13

*Trade Remedy Laws Administered by USITC*,
   United States International Trade Commission,
   https://www.usitc.gov/trade_remedy_laws.htm ...................................6

**Rules**

Fed Cir. R. 25.1(d)(1)................................................................................23

Fed. Cir. R. 11(b)(2)................................................................................23

Fed. Cir. R. 17(d)(2)................................................................................23

Fed. Cir. R. 25.1(c)(1)..............................................................................23

Fed. Cir. R. 25.1(c)(2)..............................................................................23

Fed. Cir. R. 29(a)(2)..................................................................................1

## STATEMENT OF INTEREST[1]

The Customs and International Trade Bar Association ("CITBA") was founded in 1917 and incorporated in 1926. Today, CITBA's nearly 300 non-government attorney members represent domestic industries, importers, purchasers, international companies and customs brokers in regulatory and administrative proceedings before the U.S. International Trade Commission, the Department of Commerce, the United States Trade Representative, Customs and Border Protection, the Court of International Trade, and the Court of Appeals for the Federal Circuit. CITBA, therefore, on behalf of its members, has a direct interest in the rules and practices governing the protection of confidential business information provided by their clients to administrative agencies and the courts.

CITBA agrees with the U.S. International Trade Commission that the Court of International Trade erred in rejecting the Joint Motion to Retract the Court's

---

[1] Timely notice of intent to file this brief was provided, and all parties have consented to its filing. Pursuant to Fed. Cir. R. 29(a)(2), no part of this brief was authored by counsel for any party, and no person or entity has made a monetary contribution to its preparation or submission other than the amicus curiae, its members, or its counsel. Additionally, while CITBA includes U.S. Government lawyers, government attorneys did not participate in the decision to file or in the preparation of this brief nor did CITBA board members whose firms have an interest in the proceeding vote or participate in the preparation of this brief.

Slip Opinion and Accord Confidential Treatment to Business Proprietary

Information Contained Therein.[2]

## <u>INTRODUCTION</u>

In the decision below, the court extols the "virtues of transparency" and the

importance of public access to information in judicial and investigative

proceedings by the Commission. *See CVB, Inc. v. United States*, 681 F. Supp. 3d

1313, 1321-23 (Ct. Int'l Trade 2024). CITBA agrees with these principles. As

practitioners before the Commission and the Court, CITBA recognizes and

supports the public dissemination of information that is not confidential. Such

transparency is important for the companies that the members of this bar represent

in Commission proceedings; for the promotion of knowledge and understanding

relating to the area of trade law; and for members of the general public that may

have economic, commercial, legal, academic, journalistic, or other interests in a

particular case. With respect to client representation, greater disclosure allows

counsel to have more informed and productive discussions with clients regarding

the meaningful issues in the case. Counsel also rely on prior, public Commission

determinations and staff reports in conducting legal research to support their

arguments; thus, having more information publicly available – including specific

---

[2] Nonconfidential Principal and Response Brief of Defendant-Cross-Appellant
United States, *CVB, Inc. v. United States*, No. 2024-2504, 2024-2566 (Fed. Cir.
Sept. 30, 2024).

industry and market data – allows counsel to better assess past cases that may be analogous or instructive to a current proceeding.

Shared interests in disclosure, however, must be weighed against the importance of developing as comprehensive a record as possible. The Commission and entities participating in an investigation[3] depend on a comprehensive and accessible factual record. Full participation by companies that possess the factual information necessary for interested participating entities to advocate for their respective legal positions, and for the Commission to reach a decision based on a robust investigation, is critical. Such information and data, however, are often closely held by the entity that would be submitting the information to the Commission. Thus, the value of the confidentiality procedures in place at the

---

[3] Although the relevant statutory language and legislative history typically refers to "parties" in a trade remedy investigation, the statute and Congress explicitly recognized that non-parties also play a key role in those investigations. Accordingly, CITBA generally uses the term "participating entities" to refer to all private participants in an investigation at the agency level – both parties and non-parties – to avoid unintended exclusionary inferences regarding the term "parties" where all participating entities share an interest in safeguarding confidential information. Note, however, that the term "participating entities" is intended to be construed narrowly in the context of disclosure of confidential information under a protective order, as the Commission's Administrative Protective Order ("APO") procedures effectuate legislative intent by allowing the disclosure of confidential information only to *counsel* for interested parties that have signed on to the protective order to prevent the disclosure of competitively sensitive information to company representatives. All uses of the term "parties" in quoted language have been retained as in the original.

Commission to incentivize submission of, and subsequently protect, sensitive information cannot be overstated.

Pursuant to its statutory obligations, the Commission is only permitted to disclose information designated as proprietary by the submitter in three specific circumstances, namely, where it can be done so in a manner that does not reveal the individual operations of a firm; where the information is disclosed to interested parties under a protective order;[4] or where the Commission receives the consent of the person submitting the information. *See* 19 U.S.C. § 1677f(a)(4)(A); 19 U.S.C. § 1677f(c)(1). Counsel rely on the agency's confidentiality procedures to solicit sensitive information from companies, including both clients and other market participants such as other producers, importers, or purchasers. Throughout the stages of a proceeding – from domestic industry coalition-building and petition development, to the submission of questionnaire responses, to supporting and rebutting claims through briefing – companies share business proprietary information in reliance on the Commission's confidentiality rules, practices, and procedures as explained by their counsel.

Ultimately, more information is better for interested parties seeking to prosecute or defend against a request for trade remedies, but reliable treatment of

---

[4] *See supra*, note 3 (discussing how the Commission's APO procedures limiting the disclosure of confidential information to counsel for interested parties effectuate legislative intent).

confidential information is necessary to achieve that goal. Confidence in the

effectiveness of the Commission's confidentiality rules is especially critical for

companies that may have differing motivations or degrees of interest in the case.

Parties that are seeking or objecting to trade remedies have built-in incentives to

participate in these cases and the confidentiality provisions bolster their

participation.  Yet purchasers of subject product – which are not treated as

"interested parties" with access to the confidential record under the relevant statute

and the Commission's APO procedures – often lack the same level of motivation

to respond to questionnaires absent equally strong confidence that their

participation (*i.e.*, names) and responses will be protected from disclosure.  At the

same time, purchasers' questionnaire responses often prove to be among the most

important evidence of the conditions of competition and/or the causal relationship

between imports and the domestic industry's alleged material injury or threat

thereof.  The removal or degradation of the confidentiality assurances, therefore,

would gravely imperil the willingness of purchasers to respond to the

Commission's questionnaire.

## ARGUMENT

I. **THE LEGAL FRAMEWORK FOR THE PROTECTION OF CONFIDENTIAL INFORMATION BALANCES TRANSPARENCY AND PARTICIPATING ENTITIES' INTERESTS UNDER THE TRADE REMEDIES STATUTE**

### A.    The Statutory and Regulatory Regime

In setting forth the statutory authority and responsibilities of the U.S. International Trade Commission ("the Commission"), Congress tasked the Commission with administering trade remedy laws and adjudicating whether a domestic industry is materially injured or threatened with material injury by reason of imports that are sold in the United States at less than fair value or that benefit from countervailable subsidies provided through foreign government subsidies.[5] Congress recognized that this is a fact-intensive inquiry and gave the Commission broad authority, including subpoena power, to collect and manage "any document, paper, or record, pertinent to the subject matter under investigation," in the possession of any entity engaged in the production, importation, or distribution of any article under investigation, and necessary to carry out such statutory functions under 19 U.S.C. § 1333(a).

Congress established a framework to provide robust protection to business proprietary information ("BPI") but balanced such protection with the due process

---

[5] Trade Remedy Laws Administered by USITC, United States International Trade Commission, https://www.usitc.gov/trade_remedy_laws.htm.

rights of participating entities appearing before the Commission.  In recognition of these competing interests, the statute provides that the Commission shall not publicly disclose any proprietary information except in the three specific above-mentioned circumstances (*i.e.*, anonymity, under a protective order, or with consent).  Importantly, the statute even requires the Commission, if it determines that a person's designation of information as proprietary is unwarranted, to return the information to the submitter. 19 U.S.C. § 1677f(b)(1)(A).

The legislative intent of 19 U.S.C. § 1677f was to help the Commission "complete its investigations within the tight time limits for investigation provided by statute" by granting "broad authority to frame such regulations as are necessary to ensure maximum possible access to information . . . ." S. Rep. No. 100-71 at 112 (June 11, 1987).  Congress recognized the need for this broad authority because "in an injury investigation conducted by the ITC pertinent information is derived from a variety of sources, many of whom are not parties to the proceeding." *Id.*  This point is true for all market participants from whom information is sought, including those such as purchasers who are not eligible to be "interested parties," but who nonetheless possess data valuable to the case.

Consistent with the legislative intent, in adopting regulations to meet its statutory obligations, the Commission defined categories of confidential business information:

the disclosure of which is likely to have the effect of either impairing the Commission's ability to obtain such information as is necessary to perform its statutory functions, or causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Commission is required by law to disclose such information.

19 C.F.R. § 201.6(a)(1).

Importantly, the Commission does not automatically guarantee and grant the confidential status of submissions. Rather, to discern whether information being submitted should be treated as BPI, the Commission also established a procedure for submitting business information in confidence and asking the Commission to treat the information as BPI. *See generally* 19 C.F.R. § 201.6(b). Under Commission Rules, the submitter must provide various information such as the nature of the subject information, a justification for the request for its confidential treatment, and a certification in writing under oath that substantially identical information is not available to the public. *Id.* (b)(3). If the Commission determines that confidential treatment of the information is not warranted, the Commission is required to *return* the information to the submitter. 19 U.S.C. § 1677f(b)(2); 19 C.F.R. § 201.6(g); *see also* Section II, *infra*. Participating entities may also appeal the Commission's approval or denial of the submitter's requests for confidential treatment within certain timeframes. *See generally id.* (e)-(f).

The Commission upholds the statutory regime balancing the public interest in transparency with the parallel interest in protecting participating parties' confidential information in a number of ways. The Commission holds public hearings in trade remedy cases, thereby allowing any interested entities to witness the hearing and participate, if desired. The public hearing in a trade remedy investigation serves as a fact-finding forum: "its purpose is to allow interested parties to express their views and to permit Commissioners to ask questions and solicit information that will be useful to them in reaching a determination."[6]

In addition to holding public hearings, the Commission supports transparency in trade remedy investigations by independently researching publicly available information regarding market dynamics of the particular products subject to investigation and publishing public versions of its Staff Report and Views. The public versions of these publications provide insight into the Commission's legal reasoning as they apply the provisions of the statute and incorporate as much statistical data as possible without compromising the confidentiality of submitted information.[7] To achieve this balance, the Commission generally provides data in

---

[6] *Antidumping and Countervailing Duty Handbook*, USITC Pub. 4540 (June 2015) at II-19 (hereinafter, "AD/CVD Handbook").

[7] *Id.* at II-11. The AD/CVD Handbook notes that "disaggregated data may be presented where appropriate," *id.*, further supporting the Commission's efforts to balance transparency with its statutory duty to safeguard confidential information.

aggregate form, but treats that aggregate data as confidential "if they include only one or two companies, or if the they include three or more companies and one company accounts for at least 75 percent of the total or two account for at least 90 percent of the total."[8]

The publication of public versions of both the Staff Reports and Commission Views in trade remedy investigations provides transparency into the Commission's decision-making and facilitates the trade bar's research to support their legal arguments in trade remedy investigations, while the use of aggregated data in those documents allows practitioners to utilize the data from past investigations to shape their legal strategy to provide the strongest representation for participating entities.

Consequently, the statutory and regulatory framework that protects confidential information submitted in a trade remedy investigation balances the public desire for transparency in the Commission's legal decision-making and participating entities' interests in maintaining the confidential status of information.

---

[8] *Id.* at II-26.

B.    **Congress Intended for the Confidentiality Provisions of the Statute to Cure a Lack of Transparency in Commission Proceedings**

1.    **The Absence of Protections for Confidential Information Encroached on Participating Entities' Rights**

Prior to the Trade Agreements Act of 1979, the only information the Commission was required to make available to counsel to parties was non-confidential information to the extent required by the Freedom of Information Act. S. Rep. No. 96-249, at 98-99 (1979). The limited access to information hampered the ability of counsel for both petitioners and respondents to understand the entirety of the record before the Commission, to rebut, correct, or clarify information submitted by other participating entities, and to effectively advocate for their clients' positions. Practitioners' lack of access to confidential information also deprived the Commission itself of a more robust factual record developed by the participating entities and more informed arguments and analysis.

An attorney for respondents explained how difficult it was to practice without access to confidential information in a 2017 publication celebrating the centennial of the Commission:

> At that time counsel did not have access to a Commission staff report or, initially, to responses from questionnaires. Representing Japanese respondents, "we handled the economic issues in a very primitive, pragmatic way. We would get the statistics that were available from the Census Bureau, and we made a big use of Dun &

11

> Bradstreet reports. Unreliable as they notoriously were
> …."[9]

A petitioners' attorney had similar views:

> Trade remedy proceedings … before 1980 were
> characterized by relatively truncated decisions by the
> Commission, limited access to information of record, and
> very limited judicial review …. the biggest improvement
> for practitioners was access to all information of record ….
> This permitted counsel for parties to make more informed
> arguments, to identify potential issues of importance for
> the Commission and Commission staff, and to improve
> generally the level of advocacy before the Commission.[10]

Congress established the present system giving counsel for interested parties

access to confidential information with protections from unauthorized disclosure in

direct response to these concerns.  The system that was created has greatly

benefitted practitioners and their clients, including domestic producers, foreign

producers, importers, and foreign governments.  Access to confidential information

has improved the transparency of Commission proceedings and decisions, allowed

counsel for interested parties to more meaningfully advocate for and protect their

interests, and led to more robust injury determinations.

---

[9] *A Centennial History of the United States International Trade Commission*,
USITC Pub. 4744 (Nov. 2017) at 294 (oral history as told by Noel
Hemmendinger).

[10] *Id*. at 301-302 (oral history as told by Terence P. Stewart).

2. **Congress Recognized That Parties' Interests Are Served by Strong and Reliable Protections for Confidential Information**

By enacting the Trade Agreements Act of 1979,[11] which added new Section 777 ("Access to Information") to the Trade Act of 1930, Congress recognized the importance of developing rules for the treatment and disclosure of confidential information precisely so that companies would be best positioned to participate and advocate for their interests in antidumping and countervailing duty proceedings. At the time, as the Senate Report on the bill explained, the *absence* of a confidentiality regime in trade remedy proceedings limited the ability of interested parties to fully exercise their rights:

> Section 777 provides the maximum availability of information to interested parties consistent with the need to provide adequate protection for information accorded confidential treatment. *Petitioners under the antidumping and countervailing duty laws have long contended that their ability to obtain relief has been impaired by its lack of access to the information presented by the exporters and foreign manufacturers. By the same token, importers, exporters, and other respondents in such cases have complained of lack of access to information supplied by the domestic parties to such cases, particularly with respect to the economic health of the domestic industry involved.* Access to information at the administrative level is even more imperative under the bill, which provides that the standard of judicial review of most administrative

---

[11] Trade Agreements Act of 1979, Pub. L. No. 96-39, § 101, 93 Stat. 144, 187 (1979) (codified as amended at 19 U.S.C. § 1677f).

> actions in countervailing duty and antidumping duty
> proceedings is one of review on the administrative record.

S. Rep. No. 96-249, at 99-100 (1979) (emphasis added); *see also* H.R. Rep. No.

96-317, at 77 (1979).

Several years later, the Omnibus Trade and Competitiveness Act of 1988

amended the confidentiality provisions of Section 777 further to *require* the

Commission to issue protective orders and to release all confidential information

(subject to certain limitations) under such orders.  *See* S. Rep. No. 100-71, at 111

(1987).  Both expanding the scope of the statutory provision and mandating the use

of protective orders to require disclosure of *all* confidential information to

"authorized representatives"[12] were identified as necessary actions to further

promote interested parties' rights in a proceeding:

> The Committee is concerned that the ITC's practice
> creates difficulties for parties to ITC investigations. In
> most investigations, the bulk of the information collected
> by the ITC and on which it bases its decisions consists of
> confidential business information submitted by domestic
> producers, importers, and purchasers of the allegedly

---

[12] "Authorized representatives include outside legal counsel for interested parties, and consultants or other experts if either (a) such individuals are under the control and advice of legal counsel and legal counsel has signed on their behalf or if (b) such individuals regularly appear before Commerce or the ITC (and the agency thus has effective sanctions to be applied against them) or (c) in other instances in which the agency has effective sanctions to be applied against the individuals. In determining whether in-house counsel may properly be given access, Commerce and the ITC should be guided by the factors enumerated in *United States Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984)."  H.R. Rep. No. 100-576, at 623 (1988) (Conf. Rep.).

dumped or subsidized articles under investigation. Only aggregate data that cannot reveal the proprietary information of individual companies are released to the parties and the public. *Because the ITC does not allow representatives of the parties access to the more detailed information in the record, they typically lack the very data that are essential for them to present their cases effectively.* Moreover, on occasion the ITC commits an error in the presentation or interpretation of the data that counsel for the parties could bring to the ITC's attention before it makes a determination on the merits of the case if counsel were allowed to review the data. . . . The Committee believes that the administrative process would be greatly improved if parties to an investigation who request protective order access be given it in a timely manner that enables them to use the information effectively.

*Id.* at 112 (emphasis added).

Congress also determined that it was critical to balance the decision to broaden access to confidential information under protective order with assurances that such information would be protected from unauthorized disclosure. The level of confidence in such protections would be promoted by "effective enforcement" through "effective sanctions against violations" of such protections. H.R. Rep. No. 100-576, at 623 (1988) (Conf. Rep.). Reliance on the protection of confidential information, in turn, would foster participation and enhance the Commission's ability to collect necessary information:

Finally, *the best insurance that the ITC will be able to obtain the information it needs for its investigations is its reputation for strictly maintaining the confidentiality of information submitted to it.* The Committee endorses the

15

> ITC's protecting that reputation through the threat and, if necessary, use of strong sanctions under section 1677f(c)(1)(B) against any person found in violation of an administrative protective order . . . .

S. Rep. No. 100-71 at 114 (emphasis added).  In seeking to promote interested parties' rights to "present their cases effectively," Congress understood that an effective mechanism for protecting confidential information was necessary to achieve a potent administrative process.

The congressional intent to preserve the confidentiality of BPI explicitly extended to judicial review of the Commission's determinations in trade remedy proceedings.  19 U.S.C. §1516a(b)(2)(B) provides that:

> *The confidential or privileged status accorded to any documents, comments, or other information shall be preserved in any action under this section.* Notwithstanding the preceding sentence, the court may examine, in camera, the confidential or privileged material, and may disclose such material under such terms and conditions as it may order.

19 U.S.C. § 1516a(b)(2)(B) (emphasis added).  Congress elaborated on this statutory provision by stating that "[s]pecial provision would be made in (b)(2)(B) for preserving the confidential or privileged status of any materials contained in the record, including, where the court determines it would be appropriate, the disclosure of privileged or confidential material only under the terms of a protective order." S. Rep. No. 96-249 at 248.  Further, "the lack of a determination during the administrative proceedings concerning confidentiality or privileged with

respect to documents, comments, or information *will not preclude* a party from seeking protection for such material from the court." *Id.*

The CIT's disclosure in its opinion of information in the administrative record designated as BPI after the administrative record was closed and without the consent of the party submitting BPI is therefore directly contrary to the statutory and regulatory framework as well as the CIT's historic recognition that proprietary information safeguards serve to balance the Commission's investigatory needs and participating entities' needs to protect confidential information. *See Kemira Fibres Oy v. United States*, 858 F. Supp. 229, 234 (Ct. Int'l Trade 1994). If there is a risk that the information might be publicly disclosed in subsequent litigation, participating entities will inevitably be less willing to provide detailed sensitive information about their operations in questionnaire responses and other written submissions. Such consequences of disclosure of BPI will significantly undermine the Commission's ability to fulfill its statutory functions in accordance with 19 C.F.R. § 201.6 and effectively administer trade remedy laws in accordance with congressional intent.

## II. COUNSEL RELY ON THE STATUTE'S CONSENT REQUIREMENT TO OBTAIN INFORMATION FROM COMPANIES THAT WOULD OTHERWISE NOT PROVIDE SUCH INFORMATION

Counsel rely on the Commission's confidentiality procedures to solicit and obtain confidential information from companies that they would otherwise not

provide due to concerns regarding the potential disclosure of information significant to competitive business interests.  As both Congress and this Court have recognized, the provision of company-specific data provided through questionnaires and other submissions described further below in Section III is an integral part of the Commission's investigative process and essential to the fulfillment of its statutory obligations.  *See supra*, Section I.B.2; *see also Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1482 (Fed. Cir. 1986).

Questionnaire data submitted to the Commission in trade remedy investigations commonly includes substantial information related to a company's market activity – as a producer, importer, or purchaser – with regard to the specific product being investigated.  This detailed, product-specific information is unlikely to be found in a company's public statements regarding general market trends or even statements regarding company profitability or investment plans.  Accordingly, both this Court and the CIT have recognized that disclosure of questionnaire responses may cause irreparable harm to the competitive interests of the companies that provided the information and inadvertently result in the provision of undue business advantage to a competitor. *Id.*; *see also Hyundai Pipe Co., Ltd. v. U.S. Dep't of Commerce*, 11 CIT 238, 243 (1987).

The only reason that companies agree to submit confidential information to the Commission is because counsel – or, when not represented by or working with

counsel, the Commission directly through written or other means – informs them

that such information will not be disclosed without their consent.  These

procedures are essential for developing the record on which interested parties can

make their case.

Pursuant to the statute, once confidential treatment is granted, the

Commission cannot disclose confidential information without the consent of the

submitter of the information:

> Except as provided in subsection (a)(4)(A) and subsection
> (c), information submitted to the administering authority
> or the Commission which is designated as proprietary by
> the person submitting the information shall not be
> disclosed to any person without the consent of the person
> submitting the information. . . .

19 U.S.C. § 1677f(b)(1)(A); *Hebei Golden Bird Trading Co. v. United States*, 2017

WL 3017099, at *5 (Ct. Int'l Trade July 17, 2017); *see* 19 C.F.R. § 201.6(g) (2024)

("Any business information submitted in confidence and determined to be entitled

to confidential treatment shall be maintained in confidence by the Commission and

not disclosed except as required by law.").

The statutory consent requirement ensures the balancing of public and

private interests by providing the companies submitting confidential information

with the final decision regarding potential disclosure of that information.  When

faced with potential Commission disclosure of information, the submitting

company can either acquiesce or withdraw the information at issue.

19

Counsel rely on this requirement for "the consent of the person submitting the information" because this assures *all* submitters of sensitive information (whether interested parties or other participants like purchasers) that entities other than the Commission cannot second-guess confidential treatment claims. Any decision as to whether their sensitive information will remain protected from disclosure resides with the Commission, subject to the rights of the submitting company. *See, e.g.*, 19 C.F.R. § 201.6(d) (2024) (providing that approvals or denials of requests for confidential treatment "shall be made only by the Secretary or Acting Secretary"); *id*. § 201.19 (establishing that the Commission will not disclose information designated as confidential pursuant to a Freedom of Information Act request unless certain notice and objection opportunity requirements are met).

Indeed, when companies permit counsel to submit to the Commission information that is not susceptible to disclosure other than under a protective order, they do so aware of and relying on the Commission's legal obligation to impose significant sanctions, including criminal penalties, if counsel or Commission employees with access to the information fail to comply with the Commission's APO. *See* 19 U.S.C. § 1677f(c)(1)(B); 19 C.F.R. § 207.7(d) (2024); 18 U.S.C. § 1905.

Even when the Commission's determination in a proceeding is appealed to the U.S. Court of International Trade, the Commission remains the guardian of the record documents. *See* 28 U.S.C. § 2635(b)(1)(A)-(B) (providing that the Commission provides the court with the record of a contested action under 19 U.S.C. § 1516a containing a "copy" of the Commission's gathered information); *U.S. Int'l Trade Comm'n v. Tenneco West*, 822 F.2d 73, 75 n.1 (D.C. Cir. 1987).

Submitters' confidence in the security of their information is also supported by the procedures that apply when a question arises about affording confidential treatment. Under the statute, if the Commission suspects that confidential treatment of certain information might be unwarranted, the Commission is directed to notify the submitter of the information:

> If the administering authority or the Commission determines, on the basis of the nature and extent of the information or its availability from public sources, that designation of any information as proprietary is unwarranted, then it shall notify the person who submitted it and ask for an explanation of the reasons for the designation. Unless that person persuades the administering authority or the Commission that the designation is warranted, or withdraws the designation, the administering authority or the Commission, as the case may be, shall return it to the party submitting it. . . .

19 U.S.C. § 1677f(b)(2). At that point, the Commission will either return the information to the submitter, or the submitter may consent to the public disclosure of such information. *Id.*; *see* 19 C.F.R. § 201.6(g) (2024); *see also* 19 C.F.R.

21

§ 207.7(g)(2), (4) (2024) (similarly instructing the Commission to return information to its submitter upon declining a request for exemption from disclosure under APO).  This choice by the submitter of information to disclose or accept the return of the information is fundamental to counsel's ability to support companies in making informed decisions about how sensitive commercial information is used.

If, on appeal, the Court intends to disclose information previously treated as confidential because it is deemed to be publicly available or for another reason under the balancing of interests, counsel must have the opportunity to provide justification for continuing confidential treatment, consistent with statutory protections at the administrative level.  The statute states that the Commission "shall" notify the submitter of the information and solicit an explanation for confidential treatment, meaning that step is mandatory when confidentiality is called into question.  19 U.S.C. § 1677f(b)(2).  A submitter's opportunity to explain why confidential treatment is warranted is the sole action prescribed in the statute when such treatment is called into question.  *Id.*  That unqualified right to an opportunity to advocate for continuing confidential treatment is necessary to inducing the submission of sensitive information to the Commission in the first instance.

This Court's rules also support the preservation of confidential record data while simultaneously balancing the public interest in judicial transparency.  The

rules establish word limitations on redactions in legal arguments, but those redaction limitations "do not apply to appendices; attachments; exhibits; and addenda to motions, petitions, responses, replies, or briefs"[13] – the very locations where proprietary information is likely to be provided. In addition, the rules provide that, "[i]n general, any portion of the record that was subject to a protective order in the trial court or agency *must* remain subject to that order on appeal or review."[14]

The rules also provide that "[a] party or counsel for a party must be permitted to inspect and copy material contained in the record governed by a protective order of an agency in accordance with that order"[15] and, in cases where a party to the appellate litigation wishes to remove the confidential status of some portion of the record, "that party must seek an agreement with the other parties."[16]

Companies submitting sensitive information to the Commission rely on an opportunity to be heard prior to disclosure of sensitive information and on the ability to withdraw such information if confidential treatment is denied. Counsel must also be able to assure companies that the choice between disclosure of the confidential

---

[13] Fed Cir. R. 25.1(d)(1).

[14] Fed. Cir. R. 25.1(c)(1) (emphasis added). This Court may, *sua sponte*, direct parties to show cause why a protective order should not be modified, *id.*, but the rules do not contemplate unilateral disclosure of confidential material by the court.

[15] Fed. Cir. R. 17(d)(2); *see also* Fed. Cir. R. 11(b)(2).

[16] Fed. Cir. R. 25.1(c)(2) (emphasis added).

information versus withdrawal of that information from the record is not lost on appeal.

If there is even *a risk* that unilateral decisions will be made by the Court in subsequent litigation that information treated as confidential by the Commission should be publicly disclosed, companies will be less willing to provide detailed sensitive information about their operations and business in their written submissions. That would have a profound chilling effect on the ability to present or defend a case under the trade laws, to the detriment of the companies' interests and the Commission's investigative function. The choice between disclosure or withdrawal of the information lies solely with the company to which the confidential information belongs – not the Court and not the Commission. These statutory rights should not disappear between the administrative proceeding and the judicial proceeding.

## III. INPUT FROM THE SUBMITTER ON THE NATURE AND CONTEXT OF THE INFORMATION IS CRITICAL TO ASSESSING CONFIDENTIALITY

The business proprietary nature of information submitted under protective order is highly contextual, and may not be evident based on a review of other publicly available information alone, thus highlighting why procedural protections for confidential information must remain in place on appeal. Input from the submitter of the information regarding both the nature and the context of the

information is critical to permit an informed assessment as to the confidentiality of the data.

Companies' submissions to the Commission may include questionnaire responses, declarations, paid subscription data, customer communications, internal presentations and strategy, market analyses and forecasts – all of which typically contain highly confidential and proprietary information. These submissions may include data and descriptions of the domestic industry's capacity utilization, production metrics, shipments, financial indicators (including operating income, profitability, and employment), pricing, and market share. Companies may also disclose specific customers and potential customers (for producers) or suppliers (for purchasers), as well as communications with those customers or suppliers (including specific bids and offers).

Petitioners are typically an association or coalition of domestic manufacturers who agree to share confidential information with the Commission and others under a protective order for purposes of bringing a trade case. U.S. importers, foreign producers/exporters, and purchasers likewise share their confidential information under protective order to help build the record and, in many instances, develop their defense strategy. These companies, however, compete with one another in the marketplace and closely guard their proprietary information from one another, their customers, and their competitors. Each

company may be unwilling to share information equally with competitors or with customers, or among different customers. For instance, a domestic manufacturer may use a specific pricing structure, implement a surcharge, or offer discounts for certain customers but not others. Similarly, a single purchaser can have both domestic and foreign suppliers and would not want to disclose its particular supply chains to its vendors.

Counsel also rely on the ability to help their clients (and non-clients that are providing support) prepare declarations to be submitted to the Commission that typically include first-hand correspondence, sales notes, call notes, and other evidence of customer or supplier negotiations. Such primary source documents, combined with a narrative declaration that explains the company declarant's understanding of the meaning, context, and market dynamics surrounding the primary documentation, are vital for the Commission to gain insight into the competitive conditions of the market under investigation. The ability to provide such sensitive information related to the customer/supplier relationship is also critical for companies to make and rebut claims regarding commercial transactions that go directly to the Commission's assessment of the statutory factors of volume effects, price effects, and adverse impact by reason of subject imports in trade remedy proceedings.

Further, information provided to the Commission (for example, capacity utilization, production, specifications, or financial data) necessarily relates to the specific domestic like product or subject import at issue, and thus often does not align with broader information publicly disclosed on company websites, in investor reports, or in regulatory filings.  A company's public earnings report may disclose the profitability of the business as a whole, but the profitability of a specific product line produced in the United States, would remain confidential.  Similarly, a company may include public information about the manufacturing process of its product on its website, but keep certain aspects of that production process – such as specific measurements, inputs, required equipment, or production steps – proprietary.  It may be generally known which producer has the largest share of the U.S. market among numerous members of a domestic industry, but the relative market shares of other, smaller producers may not be as well-known, or may change over time.  In such cases, disclosure of approximations or rankings of data such as market shares, even if specific numbers are not used, can release information that is not, in fact, publicly available but for the provision of product-, period-, and facility-specific shipment data to the Commission.

Moreover, companies develop market intelligence and forecasts through their own experience, relationships, and analysis, even if seemingly similar statements are made by other organizations (for example, industry consultants).

Companies also rely on paid subscription information,[17] such as pricing data,

market share, and foreign industry data, among other sources of information, to

gain an understanding of their competition and the marketplace.  Submitting

companies use these internal assessments and paid subscription data in responding

to the Commission's questions and requests.  Much like an attorney's compilation,

analysis, and presentation of otherwise public information for purposes of advising

a client is protected by privilege, a company's internal use and development of

otherwise public (or fee-based) information for its own competitive purposes can

be – and often is – imbued with commercial sensitivity.  Such information is

shared with outside counsel pursuant to that privileged relationship, and is

submitted to the Commission during the course of a proceeding with a request for

confidential treatment and the due process protections such a request affords.  *See

supra,* Section I.

Finally, certain documents that may be facially publicly available may need

to be kept confidential because the context of their disclosure would lead the reader

to conclude other information that would remain confidential but for that

disclosure.  Such documents, like a news article, when read in context may allow

---

[17]   This paid subscription data is closely held for compliance with copyright and
use restrictions, and only shared with counsel and the Commission with the
understanding it will not be publicly disclosed – even if another company could
pay for the same data.

the reader to "connect the dots" with respect to a suspected commercial relationship or transaction that is otherwise confidential.  These nuances are common and understood by the Commission in its careful analysis of what should and should not remain confidential.

Context, therefore, is key, and the submitter of the information is best positioned to explain why the information is commercially sensitive and should be treated confidentially.  The fact that certain types of information are disclosed publicly by a company, or could be obtained from other sources, does not necessarily render a company's proprietary information public.  The sensitivity of companies' data only increases when there are fewer companies in an industry or a smaller customer base, such that even aggregated data could indicate relative market positions and other competitive information.

Regardless of the number of companies in an industry, the mere addition of words such as "approximately," "about," or "roughly" does not provide sufficient safeguards to protect sensitive information in accordance with the statutory mandate governing trade remedy investigations.  Moreover, the disclosure of record data, even when presented in a different format than as originally provided, directly contravenes the statutory protections afforded to proprietary information that submitters rely on when providing such information to the Commission.

Without confidence in the opportunity to be heard while retaining the confidential nature of information for the entire time that information remains part of the Commission record, including on appeal, companies will be reticent to submit confidential information in the first place, thereby harming both public and private interests in the strong and fair enforcement of U.S. trade laws.

## CONCLUSION

CITBA urges the Court to reverse the Court of International Trade Order rejecting the Joint Motion to Retract the Court's Slip Opinion and Accord Confidential Treatment to Business Proprietary Information Contained Therein because not only is the disclosure of confidential information without consent contrary to the statute in trade remedy matters, such disclosure also will have a profound chilling effect on the willingness of companies to provide confidential information in trade remedy investigations and thus impair the Commission's ability in future investigations to obtain such information as is necessary to perform its statutory functions in accordance with 19 C.F.R. § 201.6.

The Commission's record and submitters' interests are served by the carefully crafted formula balancing the importance of creating a comprehensive record – and the confidentiality protections, including the consent requirement, that enable that – with the importance of public dissemination of information and the body of trade law to which the public record contributes.  Companies, however,

will be far less willing to provide detailed information about the market, their business, and their operations that *they* deem sensitive if there is a risk that the information might be publicly disclosed in subsequent litigation, regardless of the Commission's statutory responsibility to protect such information at the administrative level (or permit its withdrawal).

Both Congress and the courts recognize the important role that limiting disclosure of sensitive proprietary information plays in balancing the public and private interests in trade remedy cases. Without confidence that the statutorily provided procedural protections for confidential information, such as a notice and consent requirement, will extend from agency proceedings to the court on appeal, companies will decline to share confidential information with the Commission, severely impairing the ability of interested parties to present or defend a case and diminishing the Commission's ability to fulfill its statutory obligations.

Dated: October 25, 2024

/s/ *Deanna Tanner Okun*
Deanna Tanner Okun
**POLSINELLI PC**
1401 Eye Street NW, Suite 800
Washington, DC 20005
Email: dtokun@polsinelli.com
Telephone: (202) 626-8329

Brooke M. Ringel
**KELLEY DRYE & WARREN LLP**
Washington Harbour, Suite 400
3050 K Street, NW

Washington, DC 20007
Email: [bringel@kelleydrye.com](mailto:bringel@kelleydrye.com)
Telephone: (202) 342-8516

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
## AND TYPE STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(b). The brief contains 6,820 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14-point Times New Roman font.

/s/ *Deanna Tanner Okun*
Deanna Tanner Okun
**POLSINELLI PC**
1401 Eye Street NW, Suite 800
Washington, DC 20005
(202) 626-8329
dtokun@polsinelli.com

*Counsel for Customs and International Trade Bar Association*

Dated: October 25, 2024